### 39168. MOSS v. THE STATE.

WELTNER, Justice.

Danny Moss shot and killed Aaron Scott with a shotgun. He was tried and convicted of murder and sentenced to life imprisonment.

1. Moss and Scott had been friends since childhood. On the day of the homicide, they had been drinking and working together on a construction project. After work, they purchased and consumed more alcohol, argued about a dispute that had occurred years before, then parted in separate vehicles.

Scott was in the company of another person in a motor vehicle when Moss drove up and stepped from his vehicle, holding a shotgun. Scott stepped from his vehicle, but said nothing.

Scott raised his hands into the air when Moss cursed him, then turned his back, with his hands still raised, and said, "Shoot if you want." He then turned to face Moss, hands still in the air, at which time Moss raised the shotgun and fired, killing him with a blast fired from a distance that left powder burns on Scott's body.

A closed pocket knife was recovered from Scott's pocket. Medical evidence indicated that Scott would have been unable to close and return to his pocket the knife after the shotgun blast, which produced near instantaneous death.

We have no hesitation in finding the evidence sufficient to sustain the conviction under the current legal standard. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The failure of the trial court to charge involuntary manslaughter was not error, as Moss withdrew his written request to charge. State v. Stonaker, 236 Ga. 1 (222 SE2d 354) (1976).

3. No challenge to the array of the grand jury was filed. Instead, Moss moved to dismiss the indictment under the contention that no woman had served as foreperson of a Rabun County grand jury during the last ten years.

Under Georgia law, the court may appoint a grand jury foreperson, or may direct the grand jury to elect its own foreperson. OCGA § 15-12-67 (a) (Code Ann. § 59-208). Rabun County grand

jurors by tradition have elected their forepersons. Moss has failed to prove discrimination under the criteria enunciated in Rose v. Mitchell, 443 U. S. 545, 565 (99 SC 2993, 61 LE2d 739) (1979), and Guice v. Fortenberry, 633 F2d 699 (5th Cir. 1980), which pertain to racial discrimination in the appointment of grand jury forepersons by the trial judge.

4. Moss contends that at least three unidentified venirepersons should have been excused by the court after their voir dire responses indicated that they would be inclined toward the prosecution because they were aware of his reputation in the community, including his previous convictions for other crimes.

No juror impanelled indicated an inability to lay aside any impression or opinion previously formed, or render a verdict based on the court's charge and the evidence. Irvin v. Dowd, 366 U. S. 717 (81 SC 1639, 6 LE2d 751) (1961). This enumeration is without merit.

5. In support of his motion for change of venue, Moss succeeded in showing that many residents of his county were aware of the charges against him and of his previous convictions, and that some had formed opinions about his case. But every juror impanelled stated affirmatively that any knowledge or opinion could be laid aside, and the case tried under the evidence and the law given in charge. Moss has shown neither that the setting of the trial was inherently prejudicial nor that actual prejudice existed to such a degree that a fair trial was impossible. Murphy v. Florida, 421 U. S. 794 (95 SC 2031, 44 LE2d 589) (1975). "[U]nder *Murphy,* extensive knowledge in the community of either the crimes or the putative criminal is not sufficient by itself to render a trial constitutionally unfair. Petitioner in this case has simply shown that the community was made well aware of the charges against him and asks us on that basis to presume unfairness of constitutional magnitude at his trial. This we will not do in the absence of a 'trial atmosphere . . . utterly corrupted by press coverage,' " Dobbert v. Florida, 432 U. S. 282, 303 (97 SC 2290, 53 LE2d 344) (1977). We find no error.

6. In an effort to comply with the holding of Estelle v. Smith, 451 U. S. 454 (101 SC 1866, 68 LE2d 359) (1981), indicating that an accused should be advised prior to a court-ordered psychiatric examination of his right to remain silent and to terminate further questioning, the trial court provided in the order granting the motion for an examination filed by Moss that Miranda warnings[1] be administered prior to commencement of the examination. The examination was for the purpose of determining whether Moss was

[1] Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

capable of assisting in his defense and whether he knew right from wrong at the time of the incident. When the questions of the medical examiner touched upon the events surrounding the shooting, Moss exercised his right to terminate further questioning, and the interview ended.

Moss contends that the cessation of the examination at the point when he exercised his Miranda rights deprived him of medical testimony upon which he had planned to rely as the basis for his special and general insanity pleas. He contends that the State acted in bad faith because the examiner asked some questions relating to the specific incidents surrounding the alleged crime.

We disagree. In the circumstances, the examiner did only that which he was required to do, that is, to stop the questioning. Estelle v. Smith, supra. The consequence of that is attributable to Moss himself, not the State.

*Judgment affirmed. All the Justices concur, except Hill, C. J. and Smith, J., who concur specially.*

DECIDED NOVEMBER 30, 1982.

*John M. Brown,* for appellant.

*V. D. Stockton, District Attorney, W. Brek Barker, Assistant District Attorney, Michael J. Bowers, Attorney General, Mary Beth Westmoreland, Assistant Attorney General,* for appellee.

HILL, Chief Justice, concurring specially.

I concur in the judgment of affirmance in this case. However, I am unable to agree with the implication in Division 6 that Estelle v. Smith, 451 U. S. 454 (101 SC 1866, 68 LE2d 359) (1981), requires the giving of modified Miranda warning before commencement of a psychiatric examination requested by the defendant. Here, the defendant moved for the examination whereas in Estelle v. Smith, the defendant did not seek such an examination.

More significantly, in Estelle v. Smith, supra, the psychiatrist gave testimony against the defendant in the sentencing phase of a bifurcated death penalty case based upon his examination of the defendant as to the details of the crime. The Supreme Court observed that if the psychiatrist had limited his testimony to the issue of the defendant's competency, no Fifth Amendment issue would have arisen. 451 U. S. at 465 (101 SC at 1874, 68 LE2d at 370).

In my view, where the defendant, after consultation with and advice of his counsel, seeks a court ordered psychiatric examination, Miranda warnings are not required so long as the psychiatrist limits

his testimony to matters relating to the defendant's competency. See Estelle v. Smith, supra.

I am authorized to state that Justice Smith joins in this special concurrence.