S98A1579. BORDERS v. THE STATE.
S98A1581. WHITE v. THE STATE.
(514 SE2d 14)

BENHAM, Chief Justice.

Appellants Herbert White and Isaac Borders and three others were named in an indictment charging them with malice murder and felony murder, with the underlying felony being aggravated assault,

in connection with the death of Kevin Smith. White and Borders were tried together, and two of their co-indictees (one having been acquitted in an earlier trial and the other given prosecutorial immunity) testified against them. White and Borders were convicted of felony murder and sentenced to life imprisonment.[1]

The State presented evidence that Borders saw the victim with a bicycle on a Columbus street and approached him, asking for money Borders believed Smith owed him. Borders told Smith not to come back into the area without the money or Borders would beat him. Smith left and returned without the money. Borders punched Smith, and other persons present began kicking and punching Smith. Paramedics found the victim without a pulse and not breathing, and rushed him to a hospital where a heartbeat was re-established and the victim was placed on life-support machinery. He died three days later, with the cause of death being blunt-force trauma to the head.

A man replacing a car battery near the site of the fatal beating identified Borders as the person who slammed Smith's head into the ground during the group confrontation. Both Borders and White made statements to police which were admitted into evidence: Borders admitted striking the victim one time; White admitted being present and hearing the verbal dispute over money, but denied ever touching the victim. Each of the two co-indictees who testified stated that Borders struck the victim repeatedly with his fists and feet, and that White had been an active participant in the fight and had struck the victim several times.

1. Both Borders and White contend that the trial court erroneously denied their motion[2] to quash the count of the indictment which charged them with felony murder. That count read as follows:

And the GRAND JURORS . . . further charge [appellants] . . . with the offense of FELONY MURDER for that said accused, . . . on the 11th day of February, 1997, did then and there unlawfully while in the commission of a felony, to wit: Aggravated Assault, cause the death of [the victim], a

---

[1] The victim was beaten on February 11, 1997, and died on February 14. A true bill of indictment charging Borders and White with murder and felony murder was returned on June 10, 1997. Appellants' first trial ended in a mistrial in November 1997, and their second trial, held December 1-3, concluded with the jury's return of guilty verdicts against both defendants on the felony murder charge. Each appellant was sentenced to life imprisonment on December 3. White's appellate counsel, appointed January 6, 1998, moved for and was granted an out-of-time appeal that same day, and his notice of appeal was filed January 6. White's appeal was docketed in this Court on July 1, 1998, and oral argument was heard on October 13, 1998. Appellant Borders filed a timely notice of appeal on December 31, 1997. His appeal was docketed in this Court on July 1, 1998, and submitted for decision on the briefs.

[2] Appellant White filed the motion and appellant Borders adopted the motion.

human being, by beating [the victim] about the body causing him to fall and strike his head and by beating and kicking him about the head and body, contrary to the laws of said State. . . .

While the indictment contained another count charging appellants with the malice murder of the victim, it did not contain a count charging appellants with the aggravated assault of the victim. Appellants contend the felony murder count of the indictment is deficient because it does not contain all of the essential elements of the crime, namely the essential elements of aggravated assault. See *Smith v. Hardrick*, 266 Ga. 54 (464 SE2d 198) (1995), where we held that an indictment charging aggravated assault is fundamentally flawed when the essential elements of aggravation and intent to assault are not contained therein. See also *Mercer v. State*, 268 Ga. 856 (493 SE2d 921) (1998), where the indictment charging the defendant with malice murder and felony murder/aggravated assault described the weapons used by the defendants (their fists, feet, and a bed frame) as objects likely to cause serious bodily injury; and *Dixon v. State*, 268 Ga. 81 (1) (485 SE2d 480) (1997), where the appellate record shows that the felony murder indictment referenced the separate aggravated assault count as the underlying felony, and the aggravated assault count described the weapons allegedly used (hands and shoe-clad feet) as objects likely to cause serious bodily injury when used offensively.

In *McCrary v. State*, 252 Ga. 521, 524 (314 SE2d 662) (1984), this Court ruled that due process of law requires that an indictment "put the defendant on notice of the crimes with which he is charged and against which he must defend." An indictment apprises a defendant that he may be convicted of the crime named in the indictment, of a crime included as a matter of law in the crime named, and of a crime established by the facts alleged in the indictment regarding how the crime named was committed. Id. An indictment is void if it fails to charge a necessary element of the crime. *State v. Eubanks*, 239 Ga. 483, 486 (238 SE2d 38) (1977). See also *DeFrancis v. Manning*, 246 Ga. 307 (271 SE2d 209) (1980), where this Court held that due process of law requires that the indictment on which a defendant is convicted contain all the essential elements of the crime.

The issue for resolution is the specificity a felony murder indictment must have to withstand a due process challenge. Is it sufficient, as the State maintains, that the felony murder indictment allege only the statutory elements of felony murder, i.e., that the defendant caused the death of another human being while in the commission of

a felony?[3] Or, as appellants claim, where the underlying felony may be committed in several ways and is not the basis of a separate count of the indictment, must the manner in which the underlying felony was allegedly committed be set forth in the felony murder count of the indictment?

We need not decide today whether the felony murder indictment was adequate to put appellant on notice that he might be convicted of felony murder because the malice murder indictment sufficiently apprised appellant of that possibility. "This court on numerous occasions has held that a defendant may be convicted of felony murder under an indictment for malice murder where the underlying felony used to support the felony murder conviction is set forth in a separate count of the indictment or where the defendant is put on notice of the felony by the facts alleged in the indictment to show how the murder was committed." *Dunn v. State*, 263 Ga. 343 (2) (434 SE2d 60) (1993). Where, however, the underlying felony is not separately charged and the malice murder count does not allege sufficient facts showing that the underlying felony was committed, the defendant cannot be convicted of felony murder. *Welch v. State*, 254 Ga. 603 (1) (331 SE2d 573) (1985); *Crawford v. State*, 254 Ga. 435 (330 SE2d 567) (1985).

In *Foster v. State*, 259 Ga. 206 (4) (378 SE2d 681) (1989), this Court ruled that a malice murder indictment charging the defendant with causing the victim's death by striking and beating the victim with the defendant's hands and fists and by kicking the victim with the defendant's shoe-clad feet contained sufficient facts to put the defendant on notice that he was accused of the death of the victim as the result of an aggravated assault. But see *Dunn v. State*, supra, 263 Ga. 343 (shot victim with a gun); *Jolly v. State*, 260 Ga. 258 (3) (392 SE2d 527) (1990) (shot victim with a rifle); *Middlebrooks v. State*, 253 Ga. 707 (2) (324 SE2d 192) (1985) (shot victim with a pistol); *McCrary v. State*, supra, 252 Ga. 521; *Sutton v. State*, 245 Ga. 192 (264 SE2d 184) (1980) (shot victim with a pistol), where, in each case, the malice murder indictment set out the aggravated nature of the assault by naming as the weapon used in the assault a deadly weapon per se. See also *Fraley v. State*, 256 Ga. 178 (2) (345 SE2d

---

[3] The Court was faced with a similar enumeration of error in *Carter v. State*, 252 Ga. 502 (3) (315 SE2d 646) (1984). There, the defendant contended that a felony murder/armed robbery indictment was defective because it failed to specify the manner in which the defendant allegedly committed the armed robbery. Without elaboration, the Court ruled that the indictment was sufficient in that it was "couched in the language of the felony murder statute" and set out the offense "with sufficient specificity so as to give the defendant ample opportunity to prepare his defense." Because the *Carter* indictment contained a separate count charging the defendant with the underlying felony of armed robbery, it is distinguishable from the case at bar where there was no separate count alleging aggravated assault.

590) (1986), where, though no deadly weapon per se was allegedly used, the malice murder indictment accusing the defendant of manually strangling the victim implicitly alleged the use of hands as a weapon likely to cause serious bodily injury when used offensively.

Under the holding in *Foster*, the malice murder indictment in this case charging appellants with causing the death of the victim "by beating [him] about the body causing him to fall and strike his head and by beating and kicking him about the head and body" contained sufficient facts to put appellants on notice that they were accused of the death of the victim as a result of an aggravated assault.

2. Appellant Borders contends the trial court committed reversible error when it failed to give appellant's written requested instruction on the law of justification. The trial transcript reflects that trial counsel withdrew the request to charge.[4] Under these circumstances, the trial court did not err in failing to give the charge. *Moss v. State*, 250 Ga. 368 (2) (297 SE2d 459) (1982).

3. Appellant Borders also takes issue with the admission into evidence of a custodial statement he made two days after his arrest. On that day, Borders made a court appearance at which counsel was appointed to represent him, and Borders' mother, at his request, contacted police detectives and reported that Borders wished to speak with them. Aware that counsel had been appointed, the detectives visited appellant in jail and then transported him to the police station to hear and tape-record his statement. His recorded remarks were preceded by the officers' inquiry concerning appellant's willingness to talk without his attorney being present, and a reminder that the rights of which he had been advised two days earlier at a police-initiated custodial interrogation were still applicable. Appellant contends the statement was admitted in violation of his Fifth and Sixth Amendment right to counsel.

When either the Fifth or Sixth Amendment right to counsel is involved, once a defendant requests an attorney, all police-initiated interrogation without counsel present is prohibited. *Housel v. State*, 257 Ga. 115 (1) (d) (355 SE2d 651) (1987). While the record does not reflect a request by appellant for an attorney, we assume from the appointment of counsel that appellant invoked his right thereto. Id. at Division (1) (c). A defendant who has invoked his right to counsel may waive the right by initiating further communication with the police and knowingly and intelligently waiving the right to counsel and the right to remain silent. *Brockman v. State*, 263 Ga. 637 (1) (b)

---

[4] COURT: What is justification argument in here?
COUNSEL: I think the Court has indicated that you are not going to give that one.
COURT: Withdrawn, right?
COUNSEL: Yes.

(436 SE2d 316) (1993); *Brady v. State*, 259 Ga. 573 (1) (385 SE2d 653) (1989). It is undisputed that appellant initiated further communication with the police by having his mother contact them on his behalf. The question is whether Borders knowingly and intelligently waived his right to counsel and his right to remain silent. Waiver can be established by the introduction of the defendant's execution of a waiver of rights or the testimony of a police officer that the defendant was given his *Miranda* rights and decided to continue talking with the officer. It is undisputed that Borders did not execute a waiver of rights after he invoked his right to counsel, and that he was not advised of his *Miranda* rights, but reminded that the rights of which he had been advised two days earlier were still applicable. At the *Jackson-Denno* hearing, the police detective's uncontradicted testimony was that Borders affirmatively stated to the detectives that he wanted to talk to them without his lawyer, and that he understood his rights. The trial court reserved ruling at the *Jackson-Denno* hearing and we can find no ruling in the appellate record.

Assuming it was error to admit Borders' statement without an express waiver of his right to remain silent, that error was harmless because the statement's incriminating portions, i.e., that Borders argued with the victim, threatened the victim, and struck the victim were cumulative of the testimony of the two co-indictees who testified and the neighbor who witnessed the homicide.

4. Neither White nor Borders testified at trial. However, each defendant's statement to police was admitted into evidence after references to the four co-indictees were replaced with blank spaces or handwritten notations of "P1," "P2," "P3," and "P4" on the typewritten transcripts provided jurors, and the tape-recordings of the statements were edited to remove the names of co-indictees, leaving blanks. On appeal, both appellants contend that the admission of the non-testifying co-defendant's confession inculpating the other appellant deprived each appellant of the right to cross-examine and confront the witnesses against him. *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968).

(a) Since Borders did not raise in the trial court a Sixth Amendment/*Bruton* objection to the admission of White's redacted statement, we do not consider the issue as to him on appeal.

(b) A nontestifying co-defendant's statement is admissible, with limiting instructions, if it is redacted "to eliminate not only the defendant's name, but any reference to his or her existence. . . ." *Richardson v. Marsh*, 481 U. S. 200, 211 (107 SC 1702, 95 LE2d 176) (1987). The U. S. Supreme Court, in the recent case of *Gray v. Maryland*, 523 U. S. 185 (118 SC 1151, 1156, 140 LE2d 294) (1998), ruled that "redactions which replace a proper name with an obvious blank, the word 'delete,' a symbol, or similarly notify the jury that a name

has been deleted are similar enough to *Bruton's* unredacted confessions as to warrant the same legal result." The Court stated that a constitutional problem is presented by "statements that, despite redaction, obviously refer directly to someone, often obviously the defendant, and which involve inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial." Id. at 1157. Based on the Supreme Court precedents, we recently held that

> unless the statement is otherwise directly admissible against the defendant, the Confrontation Clause is violated by the admission of a nontestifying co-defendant's statement which inculpates the defendant by referring to the defendant's name or existence, regardless of the existence of limiting instructions and of whether the incriminated defendant has made an interlocking incriminating statement. A co-defendant's statement meets the Confrontation Clause's standard for admissibility when it does not refer to the existence of the defendant and is accompanied by instructions limiting its use to the case against the confessing co-defendant. The fact that the jury might infer from the contents of the co-defendant's statement in conjunction with other evidence that the defendant was involved does not make the admission of the co-defendant's statement a violation of the Confrontation Clause."

*Hanifa v. State*, 269 Ga. 797 (2) (505 SE2d 731) (1998). In the case at bar, the jury was notified by the blanks on the tapes and the blanks or symbolic terms inserted on the transcripts that names had been redacted, making it similar to *Bruton's* unredacted confessions. *Gray v. Maryland*, supra, 118 SC at 1156.

Assuming arguendo that there was a *Bruton* violation, our review does not end with a finding that Borders' statement was erroneously admitted over White's objection. We next review the entire trial transcript to determine whether the error was sufficiently harmful to warrant reversal of White's conviction. In his statement to police, admitted into evidence, White admitted being present at the scene of the fatal attack on the victim. Two co-indictees testified at trial that White was involved in the attack on the victim and delivered several punches to the body of the victim before he withdrew from the fray. In light of the number of persons originally alleged to have been engaged in the criminal behavior, thereby making it less likely that the jury identified White as a person represented by one of the symbols used in Borders' statement, and the eyewitness testimony that appellant was very involved in the attack on the victim,

we conclude that the admission of Borders' statement was not sufficiently harmful to White as to authorize reversal of his conviction. See *Hanifa v. State,* supra.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 8, 1999 —
RECONSIDERATION DENIED APRIL 2, 1999.

*Michael D. Reynolds,* for appellant (case no. S98A1579).

*William J. Mason,* for appellant (case no. S98A1581).

*J. Gray Conger, District Attorney, Alonza Whitaker, Neal J. Callahan, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, H. Maddox Kilgore, Assistant Attorney General,* for appellee.