313 Ga. 191
FINAL COPY

S21A0983.  SANDERS v. THE STATE.

BETHEL, Justice.

In this granted interlocutory appeal, Kelly Sanders challenges the denial of her special demurrer as to the six-count second indictment against her, arguing that it is insufficient in a number of ways. After Sanders filed her notice of appeal from the denial of her special demurrer, the State indicted Sanders a third time, and the trial court entered orders of nolle prosequi as to the first and second indictments. The State argues that because Sanders was indicted a third time and the trial court purported to dismiss the second indictment that is the subject of this appeal, Sanders' appeal is moot. We disagree that Sanders' appeal is moot. Rather, the purported order of nolle prosequi with respect to the second indictment was a nullity. We further conclude that Counts 2, 4, and 5 of the second indictment are subject to a special demurrer. However, we hold that Counts 1, 3, and 6 are not subject to a special demurrer on the

grounds argued by Sanders in her appeal. Accordingly, we affirm in part and reverse in part.[1]

## *Procedural History*

1. The victim in this case, Eugene Singletary, was shot and killed on January 22, 2018. On April 18, 2018, a Gwinnett County grand jury indicted Sanders for felony murder predicated on conspiracy to commit possession of methamphetamine, conspiracy to commit possession of methamphetamine, conspiracy to commit aggravated assault, criminal solicitation, and trafficking methamphetamine or amphetamine (the "First Indictment").[2]

---

[1] We note that the district attorney in this case initially asserted only that we should dismiss the appeal as moot and failed to file any briefing on the question that the Court posed in granting an appeal until after being explicitly directed to do so and only after oral argument occurred. Failure to file a brief addressing the merits of the case before the scheduled oral argument of the case deprived opposing counsel and the Court of the opportunity to address the State's merits arguments. We admonish the district attorney to be mindful of her duty to represent the interests of the State before the appellate courts. See OCGA § 15-18-6 (6) (duties of district attorneys include "[t]o attend before the appellate courts when any criminal case emanating from their respective circuits is tried, to argue the same, and to perform any other duty therein which the interest of the state may require[.]").

[2] The First Indictment jointly charged Sanders with Chaz Conley, but Sanders moved to sever on May 10, 2018. The trial court granted the motion on December 5, 2019. Conley ultimately pled guilty to voluntary manslaughter and aggravated assault under the First Indictment. His case is not part of this

Sanders filed a special demurrer to the First Indictment on May 10, 2018, but the trial court never held a hearing regarding that demurrer.[3]

On February 26, 2020, a Gwinnett County grand jury re-indicted Sanders for two counts of felony murder predicated on conspiracy to commit aggravated assault and conspiracy to commit armed robbery (Counts 1 and 2, respectively); conspiracy to commit aggravated assault (Count 3); conspiracy to commit armed robbery (Count 4); criminal solicitation (Count 5); and trafficking methamphetamine or amphetamine (Count 6) (the "Second Indictment"). On January 12, 2021, Sanders filed a special demurrer to the Second Indictment,[4] which the trial court summarily denied

appeal.

[3] Sanders also filed a motion to dismiss the First Indictment on March 9, 2020. The trial court denied the motion on March 10, 2020.

[4] Sanders filed a separate special demurrer to the Second Indictment on July 23, 2020, but that special demurrer is not at issue in this case. After a hearing, the trial court denied the July 23 special demurrer on October 29, 2020. On November 5, 2020, Sanders filed a request for a certificate of immediate review with regard to that order. The trial court issued the certificate but did not file it within ten days after entry of the order denying the special demurrer. Accordingly, we deemed the certificate of immediate review untimely and dismissed Sanders' application for interlocutory appeal on December 17, 2020, in Case No. S21I0472.

on January 22, 2021. Sanders filed a request for a certificate of immediate review on January 25, 2021, and the trial court granted and filed both the certificate of immediate review and an amended certificate of immediate review that same day. This Court granted Sanders' application for interlocutory appeal on March 11, 2021. On March 17, 2021, Sanders filed a notice of appeal directed to this Court, which she amended on March 19, 2021.

On May 26, 2021, a Gwinnett County grand jury re-indicted Sanders for felony murder, conspiracy to commit aggravated assault, criminal solicitation, and trafficking methamphetamine or amphetamine. On June 9, 2021, the State moved the trial court to enter an order of nolle prosequi as to the First Indictment, and the trial court did so that day. On June 21, 2021, the State moved the trial court to enter an order of nolle prosequi as to the Second Indictment, which it did that same day.

2. As a preliminary matter, the State argues that Sanders' appeal is now moot because the trial court entered an order of nolle prosequi as to the Second Indictment after Sanders filed her notice

4

of appeal. We disagree.

A notice of appeal generally divests the trial court of jurisdiction to alter the judgment or order that is being appealed. See *Ricks v. State*, 303 Ga. 567, 568 (814 SE2d 318) (2018) (noting that where a notice of appeal remains pending, the appeal acts as supersedeas so that the trial court lacks jurisdiction to consider a motion challenging the same judgment on appeal, and the trial court's ruling is a nullity necessitating vacating the trial court order); *Peterson v. State*, 274 Ga. 165, 171 (6) (549 SE2d 387) (2001) ("A notice of appeal divests the trial court of jurisdiction to alter a judgment while appeal of that judgment is pending."); see also *Styles v. State*, 245 Ga. App. 90, 92 (537 SE2d 377) (2000) (Blackburn, P. J., concurring specially) (explaining that the "loss of jurisdiction" resulting from an appeal in a criminal case applies to all "proceedings which either require a ruling on the matters on appeal or directly or indirectly affect such matters"), abrogated on other grounds by *Islamkhan v. Khan*, 299 Ga. 548, 552 (2) n.7 (787 SE2d 731) (2016).

The scope of the supersedeas effect upon filing a notice of appeal is governed by different statutes. Under OCGA § 5-6-34 (b), the filing of the notice of appeal after the grant of an interlocutory application acts as a supersedeas, meaning the order appealed from cannot go into effect. See OCGA § 5-6-34 (b) (providing that a notice of appeal timely filed after the grant of an appeal "shall act as a supersedeas as provided in Code Section 5-6-46 and the procedure thereafter shall be the same as in an appeal from a final judgment"); see also *Carr v. State*, 303 Ga. 853, 870 (6) n.19 (815 SE2d 903) (2018) (noting that appellant's notice of appeal following the grant of his application for interlocutory appeal should have acted as supersedeas). We have previously held that this Code section is a jurisdictional law that applies in criminal cases, see *Duke v. State*, 306 Ga. 171, 177 (3) (a) (829 SE2d 348) (2019), and the reference to the notice of appeal acting as a supersedeas "as provided in Code Section 5-6-46" means that the General Assembly intended that the supersedeas in a granted interlocutory application triggered by the filing of a notice of appeal would act in the same manner as a

6

supersedeas in a civil action. See, e.g., *Jones v. Peach Trader*, 302 Ga. 504, 508 (II) (807 SE2d 840) (2017) (noting that "supersedeas is presumed to attach in civil cases as soon as a notice of appeal is filed" and "deprives the trial court of the authority to act on the judgment on appeal").

In contrast, OCGA § 5-6-45 provides for supersedeas in criminal cases involving the death penalty and where the defendant is admitted to bail. See OCGA § 5-6-45 (a) ("In all criminal cases, the notice of appeal filed as provided in Code Sections 5-6-37 and 5-6-38 shall serve as supersedeas in all cases where a sentence of death has been imposed or where the defendant is admitted to bail."). This means that the trial court cannot authorize the execution of a convicted defendant or, if the defendant is out on bail, require her to start serving her sentence while her appeal is pending.

Citing *Waters v. State*, 174 Ga. App. 438, 439 (1) (330 SE2d 177) (1985), the State argues that OCGA § 5-6-45 (a) governs the notice of appeal here, and because Sanders has not been sentenced to death or admitted to bail, that there is no supersedeas in effect.

We deem that contention unpersuasive. Sanders' appeal is before us following the timely grant of a certificate of immediate review and the grant of an appeal by this Court pursuant to OCGA § 5-6-34 (b). Thus, OCGA § 5-6-45 (a) does not govern the application of supersedeas here, but rather, OCGA § 5-6-34 (b) does. Moreover, under the general principle that the trial court is divested of jurisdiction to alter the judgment or order appealed from, the trial court was without jurisdiction to nolle pros the Second Indictment. See *Ricks*, 303 Ga. at 568. Because Sanders' notice of appeal deprived the trial court of the authority to enter an order of nolle prosequi as to the Second Indictment while this appeal was pending, the order of nolle prosequi was a nullity. See OCGA § 5-6-34 (b); see also *Carr*, 303 Ga. at 870 (6) n.19.

The cases cited by the State in its argument on this question are inapposite, as none of them involve the supersedeas effect of an interlocutory appeal regarding the denial of a special demurrer of an indictment on which the trial court later took action. See *State v. LeJeune*, 276 Ga. 179, 184-185 (3), (4) (576 SE2d 888) (2003) (trial

8

court's granting the State's request for order of nolle prosequi of a second indictment, following the quashing of the first indictment, did not trigger the statute barring the State from continuing to prosecute a defendant if a trial court has twice quashed charges against him, and the filing of a notice of appeal as to the *first* indictment did not divest the trial court of jurisdiction to grant the State's petition for a nolle prosequi order as to the *second* indictment); *Strickland v. State*, 258 Ga. 764, 765 (1) (373 SE2d 736) (1988) (filing of a notice of appeal on an order denying a plea of former jeopardy does not divest a trial court of jurisdiction to amend the order, nunc pro tunc, to find the plea frivolous and dilatory); *Brown v. State*, 322 Ga. App. 446, 447-450 (1) (745 SE2d 699) (2013) (notice of appeal as to the *first* indictment did not act as supersedeas as to trial court's consideration of the *second* indictment where trial court's consideration did not directly or indirectly affect the issues on appeal); *Blanton v. State*, 324 Ga. App. 610, 613-614 (1) (751 SE2d 431) (2013) (after being re-indicted a third time, defendant appealed, and the Court of Appeals held that the trial court did not

9

abuse its discretion in granting an order of nolle prosequi as to the *first* indictment).

For these reasons, Sanders' appeal from the denial of her special demurrer as to the Second Indictment is not moot.

3. Turning to the merits of her appeal, Sanders argues that each of the counts against her in the Second Indictment is insufficient and that her special demurrer should have been granted. We agree with respect to Counts 2, 4, and 5. However, we hold that Counts 1, 3, and 6 are not subject to a special demurrer on the grounds argued by Sanders.

"A defendant is entitled to be tried on a perfect indictment and may file a special demurrer seeking greater specificity or additional information concerning the charges contained in the indictment." *Jones v. State*, 289 Ga. 111, 115 (2) (c) (709 SE2d 773) (2011). With respect to a special demurrer, the test for determining the constitutional sufficiency of an indictment

> is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises

10

> the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.

(Citation and punctuation omitted.) *State v. Wyatt*, 295 Ga. 257, 260 (2) (759 SE2d 500) (2014); see also *State v. Grube*, 293 Ga. 257, 258 (2) (744 SE2d 1) (2013). "It is useful to remember that the purpose of the indictment is to allow [the] defendant to prepare his defense intelligently and to protect him from double jeopardy." (Citation and punctuation omitted.) *Jones*, 289 Ga. at 116 (2) (c); see also *Dunn v. State*, 263 Ga. 343, 344 (2) (434 SE2d 60) (1993) ("Due process is satisfied where the indictment puts the defendant on notice of the crimes with which he is charged and against which he must defend."). "We review a ruling on a special demurrer de novo to determine the legal sufficiency of the allegations in the indictment." (Citation and punctuation.) *Hinkson v. State*, 310 Ga. 388, 392 (3) (850 SE2d 41) (2020).

(a) Count 1 charges Sanders with felony murder predicated on conspiracy to commit aggravated assault, and reads as follows:

11

[O]n the 22nd day of January, 2018, while in the commission of the offense of Conspiracy to Commit Aggravated Assault, a felony, [Sanders] did cause the death of Eugene Singletary, a human being, by gunshot, contrary to the laws of said State, the good order, peace and dignity thereof.

Sanders argues that Count 1 is flawed because it fails to sufficiently allege: (i) the proximate cause element of felony murder; (ii) a conspiracy because it does not identify the co-conspirator or an overt act in furtherance of the conspiracy; (iii) facts about the aggravated assault; and (iv) an inherently dangerous or life-threatening underlying felony. Sanders' arguments lack merit.

(i) Sanders argues that Count 1 fails to allege proximate cause in sufficient detail and that she should have been given more information about the causal link between the alleged conspiracy and Singletary's death. We disagree.

Count 1 alleges that Sanders caused Singletary's death by gunshot while in the commission of conspiracy to commit aggravated assault. The indictment therefore contains the requisite causal element, gives Sanders notice of the charge against her, and

"enables [her] to intelligently prepare a defense and safeguard against double jeopardy." *State v. English*, 276 Ga. 343, 347 (2) (c) (578 SE2d 413) (2003). See also OCGA § 16-5-1 (c) ("A person commits the offense of murder when, in the commission of a felony, he or she causes the death of another human being irrespective of malice."). While Sanders may desire greater detail about how the conspiracy resulted in Singletary's death, "[i]t is not required that the indictment give every detail of the crime." *English*, 276 Ga. at 346 (2) (a). Instead, the additional detail desired by Sanders "may be supplemented . . . by the pretrial discovery [s]he receives and any investigation [her] counsel conducts." *Wyatt*, 295 Ga. at 263 (2) (a). "[T]he language of the indictment is not too vague to inform [Sanders] of the charges against her," and the trial court did not err in denying the special demurrer on these grounds. (Citation and punctuation omitted.) *Hester v. State*, 283 Ga. 367, 368 (2) (659 SE2d 600) (2008).

(ii) Sanders also argues that Count 1 is flawed because it fails to sufficiently allege a conspiracy. More specifically, Sanders argues

that Count 1 fails to identify a co-conspirator or an overt act in furtherance of the conspiracy. However, because the alleged deficiencies are addressed in the allegations of the conspiracy count of the indictment, we disagree that the alleged errors required a special demurrer to be granted.

"Although each count must be complete within itself and contain every allegation essential to constitute the crime, this rule applies only to the offense rather than the form," and "the indictment is read as a whole." (Citation and punctuation omitted.) *State v. Jones*, 274 Ga. 287, 288-289 (1) (553 SE2d 612) (2001); see also *Hester*, 283 Ga. at 368 (2) (the rule applies to "essential elements of the crime, and not to the form of the indictment or to factual details alleged therein"). Sanders' claim that Count 1 must be vacated because it did not allege the essential elements of the underlying offense of conspiracy to commit aggravated assault is a challenge to the form of the indictment. See *Middleton v. State*, 310 Ga. 365, 369 (2) (850 SE2d 126) (2020). Accordingly, because we read the indictment as a whole, we consider whether Count 3, which

14

charges Sanders with conspiracy to commit aggravated assault, provides the information Sanders complains is missing from Count 1.

Count 3 charges Sanders with conspiracy to commit aggravated assault, and it alleges that Sanders "did unlawfully conspire with Eugene Singletary" to commit an aggravated assault against Conley. Thus, assuming without deciding that Sanders is correct in arguing that a co-conspirator had to be identified for the indictment to be constitutionally sufficient, Count 3 provides this information.

Count 3 further alleges "the overt acts of planning to assault said Chaz Conley and texting him to lure him to a certain location under false pretenses." Sanders argues that "planning to assault" Conley does not qualify as an overt act. Assuming, arguendo, that Sanders is correct in this assertion, the allegation that Sanders texted Conley "to lure him to a certain location under false pretenses" sufficiently sets forth an overt act, and "we find no authority requiring the indictment to set forth the particulars of the

overt act" in greater detail than what is alleged here. *Bradford v. State*, 283 Ga. App. 75, 78 (2) (640 SE2d 630) (2006); see also *Simmons v. State*, 174 Ga. App. 171, 172-173 (3) (329 SE2d 312) (1985). Accordingly, the conspiracy elements alleged in Count 3 can be considered with Count 1 for this analysis. And Count 1 is not subject to a special demurrer on the ground that it does not sufficiently allege a conspiracy.

(iii) Sanders further argues that Count 1 is subject to a special demurrer because it fails to allege facts about the aggravated assault she allegedly conspired to commit. Specifically, Sanders argues that she cannot tell from the indictment whom she allegedly planned to assault or how she planned to do so. Sanders' argument lacks merit.

"[A]n indictment does not have to contain every detail of the crime to withstand a special demurrer," but rather must allege the "underlying facts with enough detail to sufficiently apprise the defendant of what [s]he must be prepared to meet." (Citations and punctuation omitted.) *Kimbrough v. State*, 300 Ga. 878, 881 (2) (799

16

SE2d 229) (2017). As set forth above, Count 3 alleges that Sanders conspired to assault an identified victim, Conley. Because we consider the indictment as a whole, see *Jones*, 274 Ga. at 288-289 (1), the victim's identification provided in Count 3 may be used to provide the information that Sanders complains is missing from Count 1. See *Wyatt*, 295 Ga. at 260-261 (2).

Further, the indictment is detailed enough for Sanders to prepare her defense to the charge of felony murder predicated on conspiracy to commit aggravated assault without additional information regarding precisely how she planned to commit the aggravated assault. Because Sanders had notice that the charge of felony murder predicated on conspiracy to commit aggravated assault involved the use of a firearm, Sanders was sufficiently informed that she would need to defend against all the possible ways in which she could have planned to commit an aggravated assault using a firearm. See *Hinkson*, 310 Ga. at 394 (3) ("[A]n indictment need not say how the defendant used the weapon or object that aggravated the assault.") (citation and punctuation omitted); *Arthur*

17

*v. State*, 275 Ga. 790, 791 (2) (573 SE2d 44) (2002) (affirming the denial of a special demurrer because, "by alleging [the defendant's] general use of a gun, the State apprised him that he would have to defend against all of the possible ways of committing the assault"). Accordingly, Sanders' arguments that a special demurrer was warranted as to Count 1 on these grounds fail.

(iv) Lastly, Sanders argues that Count 1 is subject to a special demurrer because it fails to sufficiently allege an inherently dangerous or life-threatening underlying felony. Sanders argues that because the count fails to specify any aggravating factors, the alleged conspiracy is actually one to commit a simple assault, which is not an inherently dangerous felony. Sanders' argument lacks merit.

> [T]he only limitation on the type of felony that may serve as an underlying felony for a felony murder conviction is that the felony must be inherently dangerous to human life. For a felony to be considered inherently dangerous, it must be dangerous per se or it must by its circumstances create a foreseeable risk of death. In determining whether a felony meets that definition, this Court does not consider the elements of the felony in the abstract, but instead considers the circumstances under which the

18

felony was committed.

(Citation and punctuation omitted.) *Funck v. State*, 296 Ga. 371, 373-374 (1) (768 SE2d 468) (2015). Aggravated assault has been recognized by this Court as an inherently dangerous felony. See, e.g., *Smith v. State*, 290 Ga. 768, 771 (2) (723 SE2d 915) (2012) (describing aggravated assault as an "inherently dangerous felony" that can support a felony murder conviction). It stands to reason, then, that a conspiracy to commit an inherently dangerous felony, such as aggravated assault, would also be inherently dangerous.

Sanders argues that the count must allege the element that aggravates the crime above a simple assault. We agree that this is true where a defendant is charged with aggravated assault. See *Wyatt*, 295 Ga. at 261 (2) (a) (an indictment for aggravated assault must allege the "element that aggravates the crime above a simple assault"). But as recounted in Division 3 (a) above, Count 1 charges Sanders with felony murder based on the "offense of Conspiracy to Commit Aggravated Assault, a felony," and further alleges that Sanders caused the death of Singletary by gunshot. Thus, regardless

19

of whether the State was required to name an inherently dangerous felony in this count, the indictment implicitly alleged the use of a deadly weapon (a gun) in the actions leading to the death of Singletary, which sufficiently supports the aggravated nature of the assault. See *Lewis v. State*, 283 Ga. 191, 195-196 (6) (657 SE2d 854) (2008) (language of indictment alleging that defendant "did while in commission of the felony of aggravated assault, cause the death of [the victim] . . . by shooting him" sufficient to put defendant on notice of grounds for aggravation based on use of a deadly weapon) (punctuation omitted); *White v. State*, 270 Ga. 804, 807 (1) (514 SE2d 14) (1999) (collecting cases and noting that the aggravated nature of the assault was set out in the indictments where the weapon named as being used was a "deadly weapon per se"). Therefore, a special demurrer on the grounds argued by Sanders here is not warranted, and Sanders' argument that Count 1 should have been dismissed fails.

(b) Sanders next argues that her special demurrer as to Count 2 of the Second Indictment should have been granted because it fails

to allege the elements of, or sufficient facts about, the conspiracy or armed robbery and fails to sufficiently allege a causal connection between the conspiracy and Singletary's death. Count 2, which charges Sanders with felony murder predicated on conspiracy to commit armed robbery, reads as follows:

> [O]n the 22nd day of January, 2018, while in the commission of the offense of Conspiracy to Commit Armed Robbery, a felony, [Sanders] did cause the death of Eugene Singletary, a human being, by gunshot, contrary to the laws of said State, the good order, peace and dignity thereof.

The State concedes that Count 2 fails to sufficiently allege armed robbery and contends that it does not intend to proceed with this charge.

We agree that Count 2 fails to allege the elements of the predicate felony of conspiracy to commit armed robbery because in neither that count nor any count in the Second Indictment has the State alleged the elements of a conspiracy to commit armed robbery.[5]

---

[5] The State purported to allege a conspiracy to commit armed robbery in Count 4, but for the reasons explained below, that count is also subject to a special demurrer. See Division 3 (d) below.

21

In the context of post-conviction challenges to indictments, we have previously stated:

> In order to satisfy due process when an indictment charges a compound felony such as felony murder, the count charging the compound offense must contain the essential elements of the predicate offense, or the indictment must contain a separate count charging the predicate offense completely, or the indictment must elsewhere allege facts showing how the compound offense was committed.

(Citation omitted.) *Stinson v. State*, 279 Ga. 177, 178 (2) (611 SE2d 52) (2005); see also *Mikenney v. State*, 277 Ga. 64, 65 (1) (586 SE2d 328) (2003) ("[A]n indictment which omits an essential element of the predicate offense in a count charging a compound offense can nonetheless satisfy the requirements of due process as long as the indictment charges the predicate offense completely in a separate count." (citations and punctuation omitted)); *Dunn v. State*, 263 Ga. 343, 344 (2) (434 SE2d 60) (1993) (same). The same holds true here. The defendant must have some understanding of how her alleged conduct amounted to the predicate felony of the felony murder charge in order for that charge to withstand a special demurrer.

Thus, the essential elements of the underlying felony of conspiracy to commit armed robbery must be sufficiently alleged somewhere in the indictment for this count to survive.

The essential elements of conspiracy that must be alleged in an indictment are set forth in OCGA § 16-4-8, which provides that "[a] person commits the offense of conspiracy to commit a crime when he together with one or more persons conspires to commit any crime and any one or more of such persons does any overt act to effect the object of the conspiracy." See *Hendricks v. State*, 277 Ga. 61, 62 (2) (586 SE2d 317) (2003) ("The elements of conspiracy to commit a crime are conspiring and the performance of an overt act to effect the crime."). Because Count 2 fails to allege any of these elements and there is no count for conspiracy to commit armed robbery anywhere else in the Second Indictment, Count 2 fails. The trial court therefore erred in denying Sanders' special demurrer as to Count 2, and its judgment is therefore reversed as to this count.

(c) Sanders argues that Count 3, which charges Sanders with conspiracy to commit aggravated assault, should be dismissed

23

because it fails to allege a conspiracy or an aggravating factor. However, Sanders' arguments fail for the reasons outlined in Division 3 (a) (ii)-(iv) above. Accordingly, Count 3 is not subject to a special demurrer on these grounds.

(d) Sanders also argues that her special demurrer as to Count 4 should have been granted because it is a duplicative charge. Count 4 is captioned "conspiracy to commit armed robbery," but the substance of this count actually is the same as Count 3, which alleges a conspiracy to commit aggravated assault.[6] The State concedes that Count 4 does not sufficiently charge Sanders with a conspiracy to commit armed robbery and that it does not intend to

---

[6] Count 3 alleged that Sanders committed conspiracy to commit aggravated assault by

> conspir[ing] with Eugene Singletary to commit the offense of Aggravated Assault against Chaz Conley, and in furtherance of said conspiracy, the overt acts of planning to assault said Chaz Conley and texting him to lure him to a certain location under false pretenses were done to effect the object of the conspiracy.

Count 4 alleged that Sanders committed conspiracy to commit armed robbery by

> conspir[ing] with Eugene Singletary to commit the offense of Aggravated Assault against Chaz Conley, and in furtherance of said conspiracy, the overt acts of planning to assault said Chaz Conley and texting him to lure him to a certain location under false pretenses were done to effect the object of the conspiracy.

go forward with this charge. We agree with Sanders that her special demurrer as to Count 4 should have been granted.

The substance, not the caption, of the indictment controls. See *State v. Eubanks*, 239 Ga. 483, 484 (238 SE2d 38) (1977), superseded in part on other grounds as noted in *Palmer v. State*, 282 Ga. 466, 467 (651 SE2d 86) (2007); *Jackson v. State*, 316 Ga. App. 588, 592 (2) (730 SE2d 69) (2012). Because Count 4 is "entirely duplicative" of another count and provides "no additional facts by which it [could] be distinguished from that count," a grant of special demurrer is warranted here. *State v. Meeks*, 309 Ga. App. 855, 859 (2) (711 SE2d 403) (2011); see also *Williams v. State*, 307 Ga. 778, 783-784 (2) n.8 (838 SE2d 235) (2020). The trial court erred in denying Sanders' special demurrer as to Count 4, and its judgment is therefore reversed as to this count.

(e) Sanders next argues that her special demurrer as to Count 5 should have been granted because it fails to allege any facts supporting the charged offense. We agree.

Count 5 reads:

[O]n the 22nd day of January, 2018, with intent that another person engage in conduct constituting a felony, [Sanders] did request Chaz David Conley to commit the felony offense of Violation of the Georgia Controlled Substances Act: Possession of a Controlled Substance, contrary to the laws of said State, the good order, peace and dignity thereof.

"A person commits the offense of criminal solicitation when, with intent that another person engage in conduct constituting a felony, he solicits, requests, commands, importunes, or otherwise attempts to cause the other person to engage in such conduct." OCGA § 16-4-7 (a). The indictment alleges that Sanders requested that Conley possess an unspecified amount of an unspecified drug, which the indictment alleges is a felony violation of the Georgia Controlled Substances Act. See OCGA § 16-13-30.

While an indictment "does not have to contain every detail of the crime to withstand a special demurrer," it must "state the essential elements of the offense charged" and "must allege the underlying facts with enough detail to sufficiently apprise the defendant of what [s]he must be prepared to meet." (Citations and punctuation omitted.) *Kimbrough*, 300 Ga. at 881 (2). Here, Count 5

of the Second Indictment fails to allege any underlying facts, such as what drug Sanders requested that Conley possess or in what quantity, that constitute a felony violation of the Georgia Controlled Substances Act. As written, Count 5 does not give Sanders enough information about the criminal solicitation charge to "prepare [her] defense intelligently," as Sanders could have violated the statute in a number of possible ways. (Citation and punctuation omitted.) *English*, 276 Ga. at 346 (2) (a). Compare *Lord v. State*, 235 Ga. 342, 343 (3) (219 SE2d 425) (1975) (indictment sufficient to withstand special demurrer where it alleged that the defendant possessed specified amount of marijuana in violation of the Georgia Controlled Substances Act). And although we read the indictment "as a whole," (citation and punctuation omitted) *Jones*, 274 Ga. at 289 (1), it is not clear from the allegations in the Second Indictment that the drug referenced in Count 6, which alleges that *Sanders* committed felony trafficking of methamphetamine, is the same drug that Sanders is alleged to have requested *Conley* to possess in violation of the Georgia Controlled Substances Act in Count 5. Accordingly, the

27

special demurrer should have been granted as to Count 5, and the trial court erred in denying it. The judgment of the trial court is therefore reversed as to Count 5.

(f) Lastly, Sanders argues that the trial court should have granted her special demurrer as to Count 6 because the title of the count is confusing, the count does not specify whether she is being charged with a felony or misdemeanor, the count alleges an incorrect date, and the count contains a grammatical error. We disagree that the alleged errors warrant special demurrer as to this count.

Sanders complains that the title of Count 6, "Trafficking Methamphetamine or Amphetamine," is confusing because the body of the count charges her only with possessing methamphetamine. While the title of this count could cause confusion, the substance of the indictment controls, not the caption. See *Eubanks*, 239 Ga. at 484; *Jackson*, 316 Ga. App. at 592 (2). And the substance of Count 6 clearly identifies methamphetamine as the controlled substance in question. Sanders also complains that Count 6 fails to state whether she is being charged with a felony or misdemeanor. But it is clear

from the amount of methamphetamine specified in the indictment — i.e., over 28 grams — that Sanders is being charged with felony trafficking in violation of OCGA § 16-13-31 (e).

Finally, Sanders complains that Count 6 alleges an incorrect date and contains a grammatical error. But "[w]hen a special demurrer points out an immaterial defect, the trial court need not dismiss the defective charge, but may strike out or correct the erroneous portion of the indictment." *Green v. State*, 292 Ga. 451, 452 (738 SE2d 582) (2013); see also *Reed v. State*, 294 Ga. 877, 879-880 (3) (757 SE2d 84) (2014) (where date is not alleged to be an essential element of the offense charged and accused has not raised an alibi defense, "any variance between the date listed in the indictment and the date on which the crime is proven to have occurred is of no consequence"). The trial court did not err in denying Sanders' special demurrer as to Count 6, and its judgment on that count is affirmed.

*Judgment affirmed in part and reversed in part. All the Justices concur, except LaGrua, J., not participating.*

Decided February 15, 2022.

Murder. Gwinnett Superior Court. Before Judge Hutchinson.

*Wilson Morton & Downs, Robert E. Wilson, Andrew W. Yates; R. Stephen Roberts*, for appellant.

*Patsy Austin-Gatson, District Attorney, Tristan W. Gillespie, Tasha H. Pennant, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.