**FIRST DIVISION**
**BROWN, J.,**
**MARKLE AND LAND, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 17, 2025**

# In the Court of Appeals of Georgia

A25A0395. THE STATE v. EASTMAN.
A25A0396. THE STATE v. SMITH.
A25A0397. THE STATE v. TRUMP.
A25A0398. THE STATE v. GIULIANI.
A25A0399. THE STATE v. CHEELEY.
A25A0400. THE STATE v. MEADOWS.

BROWN, Judge.

In these consolidated cases arising out of an alleged conspiracy to unlawfully change the outcome of the 2020 presidential election, the State appeals from the trial court's order granting a special demurrer and quashing six counts of the indictment. The State asserts that the trial court applied the wrong legal standard when evaluating the special demurrer and that application of the correct standard requires this Court to reverse. We disagree and affirm.

"We review a ruling on a special demurrer de novo to determine the legal sufficiency of the allegations in the indictment." (Citation and punctuation omitted.) *Sanders v. State*, 313 Ga. 191, 195 (3) (869 SE2d 411) (2022). A special demurrer "challenges the sufficiency of the form of the indictment." (Citation and punctuation omitted.) *Moore v. White*, 320 Ga. 120, 125 (2) (907 SE2d 902) (2024). While "[a] defendant is entitled to be tried on a perfect indictment[,] . . . the test for determining the constitutional sufficiency of an indictment is not whether it could have been made more definite and certain[.]" (Citations and punctuation omitted.) *Sanders*, 313 Ga. at 195 (3). Instead,

> [t]he test . . . is whether it contains the elements of the charged offense, sufficiently apprises the defendant of what he must be prepared to defend against, and in case of another prosecution for a similar offense, enables him to determine whether he may plead a former conviction or acquittal.

*Moore,* 320 Ga. at 125 (2). "By filing a special demurrer, the accused claims not that the charge in an indictment is fatally defective and incapable of supporting a conviction (as would be asserted by general demurrer), but rather that the charge is imperfect as to form or that the accused is entitled to more information." (Citation

and punctuation omitted.) *White v. State*, 319 Ga. 367, 387 (5) (b) (903 SE2d 891) (2024). "It is useful to remember that the purpose of the indictment is to allow the defendant[s] to prepare [their] defense intelligently and to protect [them] from double jeopardy." (Citations and punctuation omitted.) *Sanders*, 313 Ga. at 195 (3). "An indictment does not have to contain every detail of the crime to withstand a special demurrer, but rather must allege the underlying facts with enough detail to sufficiently apprise the defendant[s] of what [they] must be prepared to meet." (Citation and punctuation omitted.) Id. at 197 (3) (a) (iii). Finally, an indictment is read as a whole, and this principle is often relied upon to withstand a special demurrer "where one count does not include sufficient details, but those details are provided in other counts of the indictment." *Powell v. State*, 318 Ga. 875, 882 (2) (901 SE2d 182) (2024).

In this case, the six challenged counts of the indictment (Counts 2, 5, 6, 23, 28, and 38) charge various defendants with the crime of solicitation, a felony punishable "by imprisonment for not less than one nor more than three years." OCGA § 16-4-7 (b). "A person commits the offense of criminal solicitation when, with intent that another person engage in conduct constituting a felony, he solicits, requests, commands, importunes, or otherwise attempts to cause the other person to engage in

such conduct." OCGA § 16-4-7 (a). The indictment alleges that the defendants at issue solicited conduct in violation of OCGA § 16-10-1, which provides: "Any public officer who willfully and intentionally violates the terms of his oath as prescribed by law shall, upon conviction thereof, be punished by imprisonment for not less than one nor more than five years."

The record shows that defendant Ray Stallings Smith filed a timely special demurrer asserting that the solicitation counts failed to allege the specific oath of office or the portion of the oath violated.[1] The counts at issue assert that various defendants on certain dates "unlawfully solicited, requested, and importuned certain public officers," including members of the Georgia Senate and Georgia House of Representatives, the Speaker of the Georgia House of Representatives, and the Georgia Secretary of State, "to engage in conduct constituting the felony offense of Violation of Oath by Public Officer, OCGA § 16-10-1." The conduct solicited by various defendants and alleged to violate the oaths of office includes: "unlawfully appointing presidential electors from the State of Georgia, in willful and intentional

_____

[1] Defendants Eastman, Trump, Giuliani, and Meadows subsequently adopted the arguments made by Smith pursuant to an order of the trial court allowing the defendants to adopt in whole or in part a motion filed by another defendant. Defendant Cheeley filed a separate special demurrer raising similar arguments.

4

violation of the terms of the oath of said persons as prescribed by law"; "calling for a special session . . . for the purpose of unlawfully appointing presidential electors from the State of Georgia, in willful and intentional violation of the terms of the oath of said person as prescribed by law"; "unlawfully altering, unlawfully adjusting, and otherwise unlawfully influencing the certified returns for presidential electors for the November 3, 2020, presidential election in Georgia, in willful and intentional violation of the terms of the oath of said person as prescribed by law"; and "'unlawfully decertifying the Election, or whatever the correct legal remedy is, and announce the true winner,' in willful and intentional violation of the terms of the oath of said person as prescribed by law."

After holding a hearing, the trial court issued an order rejecting the argument that these counts of the indictment must be quashed because they failed to specify the oath taken by the various public officials. In its view, the omissions were "legally harmless"[2] because the Georgia Code provides only one option relevant to each

---

[2] We note that with regard to special demurrers, "harmless error review is appropriate only in the post-conviction setting, not in pre-trial proceedings or on pre-trial appeal." *Wagner v. State*, 282 Ga. 149, 150 (1) (646 SE2d 676) (2007).

category of public official. See OCGA §§ 28-1-4 (a) and OCGA § 45-3-1. OCGA § 28-1-4 (a) provides:

> In addition to any other oath prescribed by law, each Senator and Representative, before taking the seat to which elected, shall take the following oath:
>
>> I do hereby solemnly swear or affirm that I will support the Constitution of this state and of the United States and, on all questions and measures which may come before me, I will so conduct myself, as will, in my judgment, be most conducive to the interests and prosperity of this state.

(Punctuation omitted.) OCGA § 45-3-1 states:

> Every public officer shall:
>
>> (1) Take the oath of office;
>> (2) Take any oath prescribed by the Constitution of Georgia;
>> (3) Swear that he or she is not the holder of any unaccounted for public money due this state or any political subdivision or authority thereof;
>> (4) Swear that he or she is not the holder of any office of trust under the government of the United States, any other state, or any foreign state which he or she is by the laws of the State of Georgia prohibited from holding;
>> (5) Swear that he or she is otherwise qualified to hold said office according to the Constitution and laws of Georgia;

(6) Swear that he or she will support the Constitution of the United States and of this state; and

(7) If elected by any circuit or district, swear that he or she has been a resident thereof for the time required by the Constitution and laws of this state.

Based on its identification of these Code provisions, the trial court "agree[d] with the State that the Defendants are sufficiently apprised of which [statutory] oath is [generally] at issue in each indicted count." It then looked to Count 1 of the indictment, which alleges a violation of the Georgia Racketeer Influenced and Corrupt Organization Act ("RICO"), to conclude that the particular oath at issue was "oaths to the Georgia Constitution and to the United States Constitution." Count 1 of the indictment spans 59 pages of the 98-page indictment; it describes "[t]he manner and methods" of the "the enterprise" as including, but not limited to, "corruptly solicit[ing]" various Georgia officials "to violate their oaths to the Georgia Constitution and to the United States Constitution by unlawfully changing the outcome of the November 3, 2020 presidential election in Georgia in favor of Donald Trump."

After finding a reference in Count 1 to the terms of the violated oaths, the trial court concluded that "the incorporation of the United States and Georgia Constitutions is so generic as to compel this Court to grant the special demurrers." It explained:

> The [c]ourt's concern is less that the State has failed to allege sufficient conduct of the Defendants — in fact it has alleged an abundance. However, the lack of detail concerning an essential legal element is . . . fatal. As written, these six counts contain all the essential elements of the crimes but fail to allege sufficient detail regarding the nature of their commission, i.e., the underlying felony solicited. They do not give the Defendants enough information to prepare their defenses intelligently, as the Defendants could have violated the Constitutions and thus the statute in dozens, if not hundreds, of distinct ways.

(Citation and emphasis omitted.) In its view, the reference in the indictment "incorporating the entirety of both the state and federal constitutions" distinguished the case from other indictments found sufficient to withstand a special demurrer. The legal analysis underpinning the trial court's ruling was its conclusion that solicitation is a compound crime that relies upon an underlying or predicate offense and that the indictment "must either include every essential element of the predicate offense or charge the predicate offense in a separate count." Accordingly, the trial court quashed

Counts 2, 5, 6, 23, 28, and 38 of the indictment, taking care to note that the State could seek a reindictment supplementing these six counts.

On appeal, the State contends that the trial court erred by equating the inchoate offense of solicitation with a compound offense, such as felony murder, and requiring the "solicitation charges [to] include details of the target felony with the same level of specificity required for compound crimes." The State contends that because "[s]olicitation belongs to a class of inchoate offenses that include[ ] conspiracy and attempt[,]" the trial court erred in imposing the "pleading requirements for compound crimes to the criminal solicitation counts of the indictment." In the State's view, the full details of the solicited felony need not be alleged because the crime of solicitation does not require that a defendant fully realize the plan or scheme of the solicited conduct. The defendants counter that they cannot prepare their defense intelligently or be apprised of what they must be prepared to meet if the indictment does not identify the portion of the Constitutions that the defendants intended and urged Georgia officials to violate.

The parties point to the Supreme Court of Georgia's decision in *Sanders*, supra, to support their respective positions. In *Sanders*, the defendant argued that a special

demurrer should have been granted because the indictment failed to allege any facts to support a charge of soliciting another to commit the felony offense of violating the Georgia Controlled Substances Act. 313 Ga. at 201-202 (3) (e). After noting that the indictment alleged that the defendant requested another to possess an unspecified amount of an unspecified drug, the Supreme Court concluded that the indictment as written did not give the defendant enough information about the solicitation charge to prepare her defense intelligently as the defendant could have violated the statute in a number of possible ways. Id.

The State contends that it was the lack of any underlying facts that rendered the indictment insufficient in *Sanders*, while the defendants point to the Supreme Court's focus on how the defendant could have violated the statute in a number of possible ways in the absence of an allegation of what quantity of what drug the defendant sought another to possess. In our view, the Supreme Court of Georgia's analysis did not rest upon whether the solicitation charge was properly classified as an inchoate or a compound offense. Rather, it focused on the standard for the grant of a special demurrer generally and whether the defendant could prepare her defense intelligently in the absence of additional information about the crime she was alleged to have

solicited. Applying a similar analysis here, we find that the indictment fails to include enough detail to sufficiently apprise the defendants of what they must be prepared to meet so that they can intelligently prepare their defenses. As the trial court pointed out in its order,

> the United States Constitution contains hundreds of clauses, any one of which can be the subject of a lifetime's study. Academics and litigators devote their entire careers to the specialization of a single amendment. To further complicate the matter, the Georgia Constitution is not a mere shadow of its federal counterpart, and although some provisions feature similar language, the Georgia Constitution has been interpreted to contain dramatically different meanings.

(Citation and punctuation omitted.) We therefore affirm the trial court's order granting the special demurrer and quashing Counts 2, 5, 6, 23, 28, and 38 of the indictment.

*Judgment affirmed. Markle, J., and Land, J., concur.*