NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: May 31, 2023

S23A0166. DAVIS v. THE STATE.

LaGrua, Justice.

Appellant Garrett Davis was convicted of felony murder in connection with the shooting death of Eugene Stinchcomb.[1] On appeal, Davis contends that (1) the evidence was legally insufficient to support his convictions, (2) his trial counsel provided constitutionally ineffective assistance, (3) the trial court erred by failing to instruct the jury on confession corroboration, and (4) the

---

[1] Stinchcomb died on May 10, 2012. On August 7, 2012, a Fulton County grand jury indicted Davis for malice murder, felony murder, aggravated assault with a deadly weapon, and possession of a firearm during the commission of a felony. At a trial from December 16 to 18, 2013, the jury found Davis not guilty of malice murder, but guilty of the remaining counts. The trial court merged the aggravated assault count into the felony murder count and sentenced Davis to serve life in prison with the possibility of parole, plus five years. Davis filed a timely motion for new trial, which was amended through new counsel. Following a hearing, the trial court denied the motion for new trial on September 2, 2022. Davis filed a timely notice of appeal, and his case was docketed to this Court's term beginning in December 2022 and submitted for a decision on the briefs.

trial court erred by failing to grant a new trial based on prosecutorial misconduct. These claims fail, and we affirm.

*Background.* The evidence presented at Davis's trial showed that, on May 9, 2012, law enforcement officers responded to a 911 call reporting a shooting at an apartment complex located at 635 Jett Street. Upon arrival, officers discovered a man bleeding from his left leg, who refused to provide his name or any information about the shooting. A 9mm shell casing was recovered near the injured man, and he was transported to Grady Hospital. Police officers spoke to several bystanders, including a man who had applied a tourniquet to the injured man's leg, but each person refused to provide any information about the shooting. The injured man died the next day, and he was eventually identified as Eugene Stinchcomb. The medical examiner determined that Stinchcomb's cause of death was probable sepsis due to a gunshot wound to the left leg.

Two days after the shooting, Rory Session called 911 and stated he was "turning in his nephew" because Davis had "confessed" to "a

2

shooting, a murder" on "Jett Street" of "Eugene Stony," who "died in Grady [Hospital] the other day." Session stated he was going to pick up Davis and then drive to a relative's house and police should meet them there.

When Session and Davis arrived at the relative's house, officers were waiting. Davis and Session were separated, and a police officer conducted a pat-down of Davis and recovered a 9mm magazine, containing a single bullet, from Davis's pocket. A 9mm handgun was also recovered from underneath the front passenger seat where Davis had been sitting. When the gun was pulled out of the car, Session stated, "[T]hat's not mine." Session told a detective that he called 911 and "told them that [Davis] had confessed to . . . a murder, to a shooting . . . over the phone today[.]"

Ballistics testing revealed that the 9mm shell casing recovered near Stinchomb's body was fired from the 9mm handgun recovered from Session's car. Crime scene technicians were unable to find any fingerprints on the shell casing, handgun, or bullet.

Several of the bystanders, who initially refused to speak to

3

police on the day of shooting, testified at trial. Rollo Gregory testified that he saw Davis walk to Jeremy Douglas's apartment, speak with Douglas for a minute, and then stand around in the parking lot. According to Gregory, Stinchcomb arrived at the apartment complex during this time frame and asked Gregory, "Who has the good dope?" Gregory responded that he did not know, and Stinchcomb would "have to check and see." Stinchcomb then went to speak to Douglas at his apartment. After Stinchcomb left Douglas's apartment, Stinchcomb encountered Davis, and they began arguing. Stinchcomb said: "I don't screw with you . . . I don't want nothing you got . . . Just leave me alone." Stinchcomb then asked, "Man, you going to shoot me?" Gregory then witnessed Davis shoot Stinchcomb, put the gun into his pants, and say, "[H]e won't talk back to nobody else like that." Gregory went over to Stinchcomb, took off his shirt, and used it to tie a tourniquet around Stinchcomb's leg.

Sir James Woods testified that on the day of the shooting, he was standing in the doorway of a friend's apartment when he heard Davis and Stinchcomb arguing, and he witnessed Davis shoot

4

Stinchcomb. And Melvin Croom testified that on the day of the shooting, he was sitting outside of his apartment, heard Davis and Stinchcomb arguing, heard a gunshot, and then saw Davis walk away from Stinchcomb.

1. Davis contends the trial court erred in denying the motion for new trial because the evidence was insufficient. We disagree.

Evidence is constitutionally sufficient to support a conviction if, "'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Jackson v. State*, 315 Ga. 543, 549 (1) (883 SE2d 815) (2023) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979)). "This Court does not reweigh evidence or resolve conflicts in testimony but rather defers to the jury's assessment of the weight and credibility of the evidence." *Jones v. State*, 314 Ga. 692, 695 (878 SE2d 502) (2022) (citation and punctuation omitted).

Here, the evidence showed that Davis shot and killed Stinchcomb in front of multiple eyewitnesses, admitted to his uncle

5

that he shot Stinchcomb, and was in possession of the murder weapon two days after the shooting. Accordingly, we conclude that the evidence was sufficient to support Davis's convictions, and this claim is without merit.

2. Davis contends that his trial counsel provided constitutionally ineffective assistance by failing to investigate alibi evidence and by failing to request a jury instruction on confession corroboration. We conclude these claims fail.

To prevail on these claims, Davis must demonstrate both that his trial counsel's performance was professionally deficient and that he was prejudiced by this deficient performance. See *Bates v. State*, 313 Ga. 57, 62 (2) (867 SE2d 140) (2022) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984)). To establish deficient performance, Davis must show that trial counsel performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. See id. Establishing deficient performance is no easy showing, as the law recognizes a strong

6

presumption that counsel performed reasonably, and [the appellant] bears the burden of overcoming this presumption. To carry this burden, he must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not. In particular, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.

*Park v. State*, 314 Ga. 733, 740-741 (879 SE2d 400) (2022) (citation and punctuation omitted). To establish prejudice, Davis must prove that there is a reasonable probability that, but for his trial counsel's deficiency, the result of the trial would have been different. See *Bates*, 313 Ga. at 62 (2). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (citation and punctuation omitted). "And, this burden is a heavy one." Id. at 62-63 (2) (citation and punctuation omitted). "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." *Taylor v. State*, 315 Ga. 630, 647 (5) (b) (884 SE2d 346) (2023) (citation and punctuation omitted). "This Court accepts a trial court's factual findings and credibility determinations on an

7

ineffectiveness claim unless they are clearly erroneous, but we apply legal principles to the facts de novo." *Bonner v. State*, 314 Ga. 472, 474 (1) (877 SE2d 588) (2022) (citation and punctuation omitted).

(a) Davis contends that his trial counsel performed deficiently by failing to investigate evidence of alibi. But, in his appellate brief, Davis also "concedes that this enumeration of error is without merit based on trial counsel's testimony at the motion[-]for[-]new[-]trial hearing and applicable case law," and we agree.

At the motion-for-new-trial hearing, Davis's trial counsel testified that he was informed of a potential alibi, i.e., that Davis was babysitting a child at a nearby apartment complex. Trial counsel went to the apartment complex to locate the parent(s) and child for whom Davis was babysitting, but trial counsel was unable to locate them after speaking with residents and a property manager. After obtaining additional details from Davis, trial counsel went back to the apartment complex, but was still unsuccessful in locating any potential alibi witnesses.

It is hardly unreasonable, or outside the scope of prevailing

professional norms, to diligently investigate an alibi and simply fail to discover any such evidence of alibi. See *Henderson v. State*, 310 Ga. 231, 244 (3) (b) (850 SE2d 152) (2020) (the appellant failed to show that trial counsel performed deficiently when the evidence showed that trial counsel attempted to locate alibi witnesses but they could not be found). Accordingly, Davis has failed to show that his trial counsel performed deficiently, and this enumeration of error fails.

(b) Davis contends that his trial counsel performed deficiently by failing to request a jury instruction on confession corroboration. See OCGA § 24-8-823 ("A confession alone, uncorroborated by any other evidence, shall not justify a conviction."). But see *Thomas v. State*, 308 Ga. 26, 30 (838 SE2d 801) (2020) ("Incriminating statements, unlike confessions, do not require corroborating evidence."). Assuming, without deciding, that Davis's statement to Session was a confession, see *English v. State*, 300 Ga. 471, 474 (2) (796 SE2d 258) (2017) (distinguishing admissions, where "only one or more facts entering into the criminal act are admitted," and

confessions, where "the entire criminal act is confessed," (citation and punctuation omitted)), and pretermitting whether Davis's trial counsel was deficient, we conclude that Davis has not established prejudice.

Here, there was ample evidence at trial to corroborate Davis's statement to Session, including the testimony of Gregory and Woods, who testified that they witnessed Davis shoot Stinchcomb, and the testimony of Croom, who testified that he witnessed Davis and Stinchcomb arguing immediately before Stinchcomb was shot. Additionally, the 9mm shell casing recovered near Stinchcomb's body was fired from the 9mm handgun recovered from underneath Davis's seat in Session's car. This other evidence was strongly inculpatory.

Thus, even if Davis's counsel was deficient for failing to request a confession-corroboration instruction, Davis has failed to show that there is a reasonable probability that the result of his trial would have been different if the trial court had given the instruction. See *Hooper v. State*, 313 Ga. 451, 456 (1) (870 SE2d 391) (2022) (the

10

appellant failed to show a reasonable probability of a different outcome where there was evidence sufficient to corroborate the confession and there was other strongly inculpatory evidence).

3. In a related claim, Davis contends that the trial court plainly erred by not instructing the jury on confession corroboration. Because Davis failed to request such a jury instruction, we review only for plain error. See *Simmons v. State*, 314 Ga. 883, 888 (2) (880 SE2d 125) (2022).

To establish plain error, Davis "must demonstrate that the instructional error was not affirmatively waived, was obvious beyond reasonable dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings. Satisfying all four prongs of this standard is difficult, as it should be." *Clarke v. State*, 308 Ga. 630, 637 (5) (842 SE2d 863) (2020) (citation and punctuation omitted). "The Court need not analyze all of the elements of the plain error test when the appellant fails to establish one of them." *Hood v. State*, 311 Ga. 855, 866 (2) (860 SE2d 432) (2021) (citation and punctuation

omitted).

As explained in Division 2 (b), there was ample, strongly inculpatory corroborating evidence at trial. Thus, Davis cannot satisfy the third prong of the plain-error test by showing that the trial court's failure to give the jury instruction sua sponte on confession corroboration likely affected the outcome of the trial court proceedings. See *Hood*, 311 Ga. at 866-867 (2) (concluding there was no plain error where the appellant failed to demonstrate that the failure to give the confession-corroboration jury instruction likely affected outcome of the trial in light of "ample evidence corroborating the confessions"). See also *Simmons*, 314 Ga. at 892 (3) (b) (equating the prejudice prong of the plain-error test with the prejudice prong for an ineffective assistance claim).4. Davis contends the trial court erred by failing to grant a new trial based on prosecutorial misconduct. We disagree.

(a) *Background.* At trial, Laneka Bristow, a crime scene technician, testified that she documented and collected the shell casing at the crime scene and sealed it in a bag for transport to the

GBI. On cross-examination, Bristow was asked whether she attempted to find a fingerprint on the shell casing, and she responded that she processed the shell casing for fingerprints, but no print was located. Bristow was asked whether her attempt to locate a fingerprint was in any of her reports, and Bristow responded that it "should be." But after reviewing both of her reports, Bristow admitted the processing of the shell casing was not in her reports.

Also at trial, Antoinette Otey, a crime scene technician, testified that she processed the handgun and bullet for fingerprints, but she was unable to recover any. Otey was asked when she tested for fingerprints, and she responded that it was "a day or two later," but that the actual date would be in her reports. Davis's trial counsel then presented Otey with her reports, and Otey testified that she processed the items for fingerprints on May 12, 2012, which was the day after the items were recovered. Davis's trial counsel then asked Otey why her reports were updated on December 5, 2013, approximately 11 days before trial. Otey responded that she "forgot" to indicate in her initial reports that she tested for fingerprints and

13

that she updated her reports when she reviewed them closer to trial.

Prior to the motion-for-new-trial hearing, Davis filed the affidavit of the Atlanta Police Department's records custodian, who averred that she searched for any records indicating that fingerprint testing was done in this case, but she was unable to locate any such documents. She further averred that "[a]ll records of fingerprint analysis on any evidence would have been documented in the provided Crime Scene Reports from Crime Scene Tech[nicians] Bristow or Otey," and "[t]hey have informed me that there is no fingerprint documentation" regarding this case.

(b) Davis contends that Otey and Bristow falsely testified that they processed the shell casing and handgun for fingerprints, and the State's failure to correct the testimony of these witnesses denied Davis due process of law. See *Harris v. State*, 309 Ga. 599, 607 (2) (c) (847 SE2d 563) (2020) ("The knowing use of material, false evidence by the State in a criminal prosecution violates due process, even where the falsehood bears upon the witness's credibility rather than directly upon the defendant's guilt." (citation and punctuation

14

omitted)). To prevail on this claim, Davis must show that

> (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material[,] i.e., that there is any reasonable likelihood that the false testimony could have affected the judgment.

Id. (citation and punctuation omitted).

Although we have serious doubts that Davis has made the threshold showing that the prosecutor knowingly used perjured testimony or failed to correct what the prosecutor subsequently learned was false testimony, we need not reach these questions because we conclude that Davis's claim was not preserved since it was not raised at trial. See *Horton v. State*, 310 Ga. 310, 325 (4) (849 SE2d 382) (2020) (concluding that the appellant's claim of prosecutorial misconduct by the State in allegedly allowing the medical examiner to testify falsely and therefore violate his due process right to a fair trial was not preserved because it was not raised at trial). Accordingly, this claim fails.

(c) Davis contends in the alternative that the State's failure to disclose evidence of fingerprint processing denied Davis due process

15

of law. See *Brady v. Maryland*, 373 U.S. 83, 87 (83 SCt 1194, 10 LE2d 215) (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."). To prevail on his *Brady* claim, Davis must show that

> (1) the State possessed evidence favorable to his defense; (2) he did not possess the favorable evidence and could not obtain it himself with any reasonable diligence; (3) the State suppressed the favorable evidence; and (4) had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the trial would have been different.

*Harris v. State*, 313 Ga. 653, 664 (5) (872 SE2d 732) (2022) (citation and punctuation omitted).

(i) Regarding the processing of fingerprints on the handgun recovered from Session's car and the bullet recovered from the magazine in Davis's pocket, we conclude that Davis has failed to show that the State possessed evidence favorable to Davis which Davis did not also possess. We know Davis possessed the evidence because his trial counsel introduced Otey's reports at trial, showing

16

that the items were processed for fingerprints, and he cross-examined Otey on the reports. Accordingly, this claim has no merit because Davis has failed to meet the second prong of the *Brady* test.

(ii) Regarding the processing of fingerprints on the shell casing recovered near Stinchcomb's body, we conclude that Davis has failed to show that favorable evidence was not disclosed to him.

At trial, Bristow testified that she processed the shell casing for fingerprints, and she did not find any fingerprints. Davis's trial counsel questioned Bristow on the fact that her reports omitted any mention of fingerprint analysis, and Bristow admitted that her reports failed to include this information.

Davis has not shown that earlier disclosure of the fact that his fingerprints were not discovered on the shell casing would have benefited him, and he has not shown that the delayed disclosure deprived him of a fair trial or materially prejudiced his case. Indeed, even if this evidence was turned over to defense counsel prior to trial, it is not material in a case where multiple people witnessed Davis shoot Stinchcomb, Davis "confessed" to his uncle, and the

murder weapon was recovered underneath Davis's car seat. See *Strickler v. Greene*, 527 U.S. 263, 280 (II) (119 SCt 1936, 144 LE2d 286) (1999) (In the context of *Brady*, "evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." (citation and punctuation omitted)).

Accordingly, this claim has no merit because Davis has failed to show a violation of *Brady*. See *Burgan v. State*, 258 Ga. 512, 514 (1) (371 SE2d 854) (1988) (concluding "*Brady* was not violated by the nondisclosure of such inconsistent statements before trial where the witness was extensively cross-examined about the inconsistencies, earlier disclosure would not have benefited the defense, and the delayed disclosure did not deprive him of a fair trial or materially prejudice his case").

*Judgment affirmed. All the Justices concur.*