318 Ga. 875
FINAL COPY

S24A0239. POWELL v. THE STATE.
S24A0240. SCOTT v. THE STATE.

LaGrua, Justice.

In these appeals — which have been consolidated for purposes of issuing an opinion — we decide whether an indictment charging two former police officers with violations of their oaths of office under OCGA § 16-10-1 by failing to conduct investigations of other police officers in purported violation of *Brady v. Maryland*, 373 U. S. 83 (83 SCt 1194, 10 LE2d 215) (1963), is sufficient to withstand the general demurrers filed in the case below.[1] For the reasons that follow, we conclude that the indictment at issue is not sufficient to withstand the general demurrers and violates federal constitutional due process, and thus, the trial court's order denying the general demurrers to the indictment should be reversed.

---

[1] OCGA § 16-10-1 provides that "[a]ny public officer who willfully and intentionally violates the terms of his oath as prescribed by law shall, upon conviction thereof, be punished by imprisonment for not less than one nor more than five years."

1. Appellant John Powell, formerly the Chief of Police of Glynn County, and Appellant Brian Scott, formerly Powell's Chief of Staff, were indicted together in the Superior Court of Glynn County for violation of their oaths as public officers for allegedly violating *Brady* by failing to promptly investigate certain allegations of police misconduct, failing to conduct an internal affairs investigation into this alleged conduct, and/or failing to take other administrative action related to this alleged conduct.[2] Specifically, in Count 1 of the indictment, Powell and Scott were jointly charged with "willfully

---

[2] On August 20, 2021, a Glynn County grand jury returned the indictment against Powell and Scott, charging Powell with four counts of violation of oath by a public officer (Counts 1 through 4) and Scott with one count of violation of oath by a public officer (Count 1). Powell's and Scott's oaths of office are attached as exhibits to the indictment. Powell's Oath of Office states in pertinent part:

I, JOHN R. POWELL, do solemnly swear (or affirm) that I will uphold the Constitution of the United States, the Constitution and statutes of the State of Georgia, and the Ordinances of the County of Glynn and that I will faithfully discharge my duties fairly and impartially as a police officer and as the Chief of the Glynn County Police Department. . . .

Scott's Oath of Office states in pertinent part:

I do solemnly swear (or affirm) that I will uphold the [C]onstitution of the United States, the Constitution and statutes of the State of Georgia and the Ordinances of the County of Glynn. I will faithfully discharge my duties fairly and impartially as a police officer of Glynn County, so help me God. . . .

2

and intentionally" violating the terms of their oaths of office under

OCGA § 16-10-1

> in that they did fail to uphold the Constitution of the United States, which provides in Article VII, Amendment V, that no person shall be deprived of life, liberty, or property without due process, as interpreted by the U.S. Supreme Court in *Brady v. Maryland*, 373 U.S. 83 [(83 SCt 1194, 10 LE2d 215)] (1963), and the said accused, after being shown a photograph of Glynn County Investigator John Dustin Simpson of the Glynn/Brunswick Narcotics Enforcement Team, hereinafter referred to as GBNET, posing with Brian Highsmith, a convicted felon for Possession With Intent to Distribute Methamphetamine, and being informed that John Dustin Simpson and Brian Highsmith maintain a close personal relationship, and said relationship being a violation of GBNET and Glynn County Police Department, . . . fail[ing] to promptly investigate said allegations and fail[ing] to timely conduct an Internal Affairs investigation of said allegations. . . .

In Count 2 of the indictment, Powell was individually charged with

"willfully and intentionally" violating the terms of his oath of office

under OCGA § 16-10-1

> in that he did fail to uphold the Constitution of the United States, which provides in Article VII, Amendment V, that no person shall be deprived of life, liberty or property without due process, as interpreted by the U.S. Supreme Court in *Brady v. Maryland*, 373 U.S. 83 [(83 SCt 1194, 10 LE2d 215)] (1963), and the said accused, after being

3

notified by the Camden County Sheriff, Jim Proctor, that Glynn/Brunswick Narcotics Enforcement Team officers, hereinafter referred to as GBNET, were working undercover drug investigations in Camden County, Georgia, without any legal authority to conduct said investigations, . . . fail[ing] to initiate an Internal Affairs investigation into said conduct and [ ] fail[ing] to take any administrative action in regard to the GBNET personnel involved in Camden County. . . .

In Count 3 of the indictment, Powell was individually charged with "willfully and intentionally" violating the terms of his oath of office under OCGA § 16-10-1

in that he did fail to uphold the Constitution of the United States, which provides in Article VII, Amendment V, that no person shall be deprived of life, liberty or property without due process, as interpreted by the U.S. Supreme Court in *Brady v. Maryland*, 373 U.S. 83 [(83 SCt 1194, 10 LE2d 215)] (1963), and the said accused, after being notified by McIntosh County Sheriff, Steve Jessup, that Colonel Danny Lowe of the McIntosh County Sheriff's Office had been stopped and detained by Glynn County law enforcement officers with the assistance of Glynn/Brunswick Narcotics Enforcement Team officers, hereinafter referred to as GBNET, on two different occasions and under questionable circumstances, . . . fail[ing] to initiate an Internal Affairs [i]nvestigation into said traffic stop and [ ] fail[ing] to identify the GBNET officers involved in said traffic stop, and [ ] fail[ing] to take any administrative action against any personnel involved in said traffic stop. . . .

In Count 4 of the indictment, Powell was individually charged with "willfully and intentionally" violating the terms of his oath of office under OCGA § 16-10-1

> in that he did fail to uphold the Constitution of the United States, which provides in Article VII, Amendment V, that no person shall be deprived of life, liberty or property without due process, as interpreted by the U.S. Supreme Court in *Brady v. Maryland*, 373 U.S. 83 [(83 SCt 1194, 10 LE2d 215)] (1963), and the said accused, after being notified that Glynn/Brunswick Narcotics Enforcement Team officers, hereinafter referred to as GBNET, were working as law enforcement officers in the State of Florida, without any legal authority to do so, and that the GBNET officers requested a Glynn County Police Officer Kevin Yarborough to effect a traffic stop on a specific vehicle, and later requested that the Glynn County Police Officer Kevin Yarborough omit from his official report involving a fatality that GBNET officers had in fact initiated the traffic stop, . . . fail[ing] to initiate an Internal Affairs [i]nvestigation into the conduct of the GBNET officers and [ ] fail[ing] to take any administrative action against any personnel involved. . . .

In November 2021, Powell and Scott each filed a general demurrer to the indictment,[3] asserting, among other things, that the

---

[3] At the same time, Powell and Scott also filed special demurrers to this indictment, as well as separate statutory demands for speedy trial pursuant to OCGA § 17-7-170. The special demurrers were denied by the trial court and are not before us on appeal. As for the speedy-trial demands, in October 2022,

indictment (1) "fails to adequately charge [Powell and Scott] with any offense against the laws of [the] State of Georgia"; (2) does not form "the bases for a felony criminal offense and therefore cannot be conduct amounting to a violation of [their] oath of office"; and (3) "fails to set forth any description of the way the alleged conduct of the accused . . . violates the United States Constitution as interpreted by the U.S. Supreme Court in *Brady v. Maryland.*" Powell and Scott also asserted that the oath-of-office statute, OCGA § 16-10-1, was "unconstitutionally vague" as applied to the facts of this case.

At the hearing on the general demurrers, Powell and Scott argued that the indictment should be dismissed because they could

Powell and Scott filed motions to dismiss the indictment, seeking to be discharged and acquitted of all charges because they were not tried during the September 2021 term of court or the next term of court, which began in March 2022 and ended in September 2022. In November 2022, the trial court held a hearing on the motions to dismiss and subsequently denied the motions. In denying the motions, the trial court determined, among other findings, that Powell and Scott failed to serve the assigned judge with their speedy-trial demands and that OCGA § 17-7-170 (a) "expressly requires a defendant [to] serve his speedy-trial demand on both the prosecutor and the judge to whom the case is assigned." The trial court concluded that, "[b]ecause Powell and Scott failed to strictly comply with the statute, they made no demand for speedy trial," and their motions should be denied.

6

admit all the facts alleged therein and not be guilty of any crimes. To that end, Powell and Scott again argued that the indictment fails to allege any facts constituting a crime; fails to allege any conduct amounting to a *Brady* violation; and fails to identify a particular case or a particular defendant whose case has been affected by a *Brady* violation or whose federal constitutional rights have been violated. The State argued that "[t]here were numerous cases of people denied their liberty" or "denied their life" by the acts and/or omissions of Powell and Scott, but the State did not identify any such cases. In response, Powell and Scott reiterated that the State had failed to specify any pending criminal cases that had allegedly been impacted by a *Brady* violation on their part, and they argued that their federal due process rights would be violated if the State was allowed "to stray from the terms of the indictment" by prosecuting them based upon cases, actions, or incidents that were not included in the indictment.

The trial court denied the general demurrers, concluding that, if Powell and Scott were to admit the allegations in the indictment,

the "admission of these allegations would constitute conduct violative of the oaths of office taken by [Powell and Scott]" and further determining that, even if "the underlying conduct charged [was] not *per se* criminal under Georgia law, . . . the conduct alleged, if proven true, would constitute conduct not only grossly inconsistent with that imposed upon [Powell and Scott] by their oaths, but also going to the very heart of the obligations they assumed when they took their oaths."[4]

2. We review a trial court's ruling on a general demurrer "de novo in order to determine whether the allegations in the indictment are legally sufficient." *State v. Mondor*, 306 Ga. 338, 341 (1) (830 SE2d 206) (2019) (citation and punctuation omitted). Having done

---

[4] Citing *Poole v. State*, 262 Ga. 718, 719 (425 SE2d 655) (1993), the trial court also concluded that OCGA § 16-10-1 was "not unconstitutionally vague as applied to Powell and Scott" and denied their general demurrers on this additional ground. Powell and Scott appealed the trial court's ruling — including the trial court's conclusion that OCGA § 16-10-1 was not unconstitutionally vague as applied to the facts of this case — to the Court of Appeals. In their appeals, Powell and Scott also sought review of the trial court's denial of their motions to dismiss the indictment on speedy-trial grounds. After observing that these appeals invoked our Court's constitutional question jurisdiction, the Court of Appeals transferred the appeals to this Court in October 2023.

so, we agree with Powell and Scott that the trial court's ruling regarding the sufficiency of the indictment was erroneous, and their general demurrers should have been granted.

"As a general matter, a demurrer (whether general or special) must allege some flaw on the face of the indictment itself," and "a court cannot go beyond the four corners of the indictment in considering a demurrer." *State v. Williams*, 306 Ga. 50, 53 (2) (829 SE2d 117) (2019). See also *Bullard v. State*, 307 Ga. 482, 486 (2) n.5 (837 SE2d 348) (2019) (noting that "the trial court could not look beyond the four corners of the indictment in considering [the defendant's] demurrer").

> To assess the merits of a general demurrer, which challenges the sufficiency of the *substance* of the indictment, a court asks whether the defendant can admit each and every fact alleged in the indictment and still be innocent of any crime. If so, the general demurrer should be sustained. But if the admission of the facts alleged would lead necessarily to the conclusion that the accused is guilty of a crime, the indictment is sufficient to withstand a general demurrer.

*Williams*, 306 Ga. at 52-53 (2) (citation and punctuation omitted; emphasis in original). Framed another way, this Court has held

that, if an indictment "recite[s] the language of the statute that sets out all the elements of the offense charged or allege[s] the facts necessary to establish a violation of a criminal statute, then the indictment is sufficient to withstand a general demurrer." *Mondor*, 306 Ga. at 341 (1) (citing *Jackson v. State*, 301 Ga. 137, 141 (1) (800 SE2d 356) (2017)).

Here, the indictment lays out the elements of the statutorily-defined crime of violation of oath of office by a public officer. See OCGA § 16-10-1 ("[a]ny public officer who willfully and intentionally violates the terms of his oath as prescribed by law shall, upon conviction thereof, be punished by imprisonment for not less than one nor more than five years"). The indictment also specifies which term of the oath of office Powell and Scott allegedly violated — their obligation "to uphold the Constitution of the United States" — and which specific provision thereof — Article VII, Amendment V of the United States Constitution as interpreted by the United States Supreme Court in *Brady v. Maryland*, 373 U. S. 83. As such, the indictment satisfies the general demurrer standard as set forth in

10

*Mondor* and *Jackson* insofar as it "recite[s] the language of the statute that sets out all the elements of the offense charged." *Mondor*, 306 Ga. at 341 (1) (citation and punctuation omitted). See also *Jackson*, 301 Ga. at 141 (1) ("[T]o withstand a general demurrer, an indictment must . . . recite the language of the statute that sets out all the elements of the offense charged[.]").

However, under these circumstances, if the indictment here only recited "the language of the statute that sets out all the elements of the offense charged" — and therefore satisfied the general demurrer standard, *Mondor*, 306 Ga. at 341 (1) (citation and punctuation omitted) — the indictment would not be sufficient to withstand a *special* demurrer, which "challenges the sufficiency of the *form* of the indictment." *Kimbrough v. State*, 300 Ga. 878, 880 (2) (799 SE2d 229) (2017) (citation and punctuation omitted; emphasis in original). "By filing a special demurrer, the accused claims . . . that the accused is entitled to more information." Id. at 880-881 (2) (citation and punctuation omitted). When considering an indictment under a special demurrer challenge,

11

we have held that an indictment not only must state the essential elements of the offense charged, but it *also must allege the underlying facts with enough detail to sufficiently apprise the defendant of what he must be prepared to meet*. As we have explained, when a court considers whether an indictment is sufficient to withstand a special demurrer, it is useful to remember that a purpose of the indictment is to allow a defendant to prepare her defense intelligently.

Id. at 881 (2) (citations and punctuation omitted; emphasis supplied).[5]

Applying those principles here, the indictment at issue charges Powell and Scott with "willfully and intentionally" violating the terms of their oath of office under OCGA § 16-10-1 by failing to uphold the due process clause of the United States Constitution as interpreted by *Brady*. *Brady* stands for the proposition that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material

---

[5] Here, it appears that the State reindicted Powell and Scott after the trial court granted special demurrers on the first indictment for a lack of sufficient underlying facts, resulting in the indictment presently at issue. The first indictment is not part of the record in this case; however, the procedural history of that indictment was referenced at the general demurrer hearing in January 2022.

12

either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U. S. at 87. This Court has explained that *Brady* "does not require the *pre-trial* disclosure of exculpatory evidence," *Davis v. State*, 261 Ga. 382, 385 (8) (b) (405 SE2d 648) (1991) (citation and punctuation omitted; emphasis supplied), and does not impose a duty upon the State to investigate. See *Brown v. State*, 250 Ga. 66, 74 (6) (295 SE2d 727) (1982); *Hines v. State*, 249 Ga. 257, 258-259 (1) (290 SE2d 911) (1982); *Baker v. State*, 245 Ga. 657, 661-662 (3) (266 SE2d 477) (1980); *Rini v. State*, 236 Ga. 715, 718 (4) (225 SE2d 234) (1976); *Hicks v. State*, 232 Ga. 393, 394-395 (207 SE2d 30) (1974). We have held that, for a criminal defendant to establish a *Brady* violation, the following four factors must be met:

> (1) the State possessed evidence favorable to [the accused's] defense; (2) [the accused] did not possess the favorable evidence and could not obtain it himself with any reasonable diligence; (3) the State suppressed the favorable evidence; and (4) had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the trial would have been different.

*Davis v. State*, 316 Ga. 418, 425 (4) (c) (888 SE2d 546) (2023)

13

(citation and punctuation omitted).

As explained above, to withstand a general demurrer in this case, the State was not required to allege any additional facts in the indictment beyond the statutory elements of OCGA § 16-10-1, but the State generally must allege additional facts to survive a special demurrer. Here, the State alleged additional facts, but those facts — namely, that Powell and/or Scott violated the terms of their oaths of office by committing *Brady* violations through their failures to investigate and undertake the administrative actions alleged in Counts 1 through 4 of the indictment — are inconsistent with the criminal statute as pleaded and negate the manner in which Powell and Scott purportedly violated the terms of their oaths of office. In other words, here, the indictment alleges that Powell and Scott committed these crimes in a specific way. If Powell and Scott admit to that, they are still innocent of the alleged crimes because it is legally impossible to commit the crimes in the way the State alleged in the indictment.

When we review the sufficiency of an indictment, "we read the

indictment as a whole." *Sanders v. State*, 313 Ga. 191, 196 (3) (a) (ii) (869 SE2d 411) (2022). We most often rely on this principle to uphold an indictment where one count does not include sufficient details, but those details are provided in other counts of the indictment. See id. (determining that an indictment survived a demurrer because, although the conspiracy count of the indictment failed to identify a co-conspirator or overt act in furtherance of the conspiracy, "the alleged deficiencies [were] addressed" in another count of the indictment). See also *State v. Wyatt*, 296 Ga. 257, 260-261 (2) (759 SE2d 500) (2014) (observing that "[w]e will consider each felony murder count and its underlying felony count together, and examine whether the entirety of the indictment provides sufficient detail about the crimes [the defendant] is accused of committing" so as to put the defendant on notice of what he will have to defend against at trial). However, here, this principle leads us to conclude that, where the details provided in each count actually *negate* the elements of the crimes charged, the indictment is not sufficient to withstand a general demurrer because Powell and Scott "can admit

15

each and every fact alleged in the indictment and still be innocent of" the crimes alleged by the State. *Williams*, 306 Ga. at 52 (2) (citation and punctuation omitted). And, although we have not articulated this specific rule before, it is consistent with our case law.

Accordingly, in this case — even assuming (without deciding) that a *Brady* violation could form the basis of a violation of oath of office charge — the facts as alleged in *this* indictment do not support such a charge because Powell's and Scott's purported failures to investigate and undertake the administrative actions alleged in Counts 1 through 4 of the indictment are not *Brady* violations.[6] See *Davis*, 261 Ga. at 385 (8) (b). See also *Mondor*, 306 Ga. at 341 (1). We thus conclude that the indictment against Powell and Scott "cannot withstand a general demurrer," *Mondor*, 306 Ga. at 341 (1),

---

[6] Although we must accept all factual allegations as true, the State's allegations that this conduct violated *Brady* are conclusions of law, which we are not required to accept. See *Wyatt*, 295 Ga. at 267-268 (3) ("[I]n reviewing demurrers, the allegations in the indictment are taken as true[.]") (citing *Lowe v. State*, 276 Ga. 538, 539 (2) (579 SE2d 728) (2003) (explaining that the court must take the allegations in the indictment as true when evaluating a demurrer)).

16

and therefore, the trial court's denial of Powell's and Scott's general demurrers to the indictment is reversed. And, because we have concluded that this indictment cannot withstand a general demurrer, we need not reach Powell's and Scott's constitutional challenge or the speedy-trial issue also before us on appeal.[7]

*Judgment reversed. All the Justices concur.*

---

[7] See *Cottrell v. Smith*, 299 Ga. 517, 520 (I) (A) (788 SE2d 772) (2016) ("[I]t is well settled that this Court will not decide a constitutional question if the decision in the appeal can be made upon other grounds.") (citing *Deal v. Coleman*, 294 Ga. 170, 171 (1) n.7 (751 SE2d 337) (2013)).

Decided April 30, 2024.

OCGA § 16-10-1; constitutional question. Glynn Superior Court. Before Judge Harrison.

*Gillen Withers & Lake, Thomas A. Withers*, for appellant (case no. S24A0239).

*Tracy A. Brown, Wayland R. Walker, Jr.*, for appellant (case no. S24A0240).

*Keith Higgins, District Attorney, Moruf O. Oseni, Assistant District Attorney; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Meghan H. Hill, Clint C. Malcolm, Senior Assistant Attorneys General*, for appellee.