**FOURTH DIVISION**
**MCFADDEN, P. J.,**
**WATKINS and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 29, 2026**

# In the Court of Appeals of Georgia

A26A0766. WATKINS v. THE STATE.

MᴄFADDEN, Presiding Judge.

Clayton Watkins was indicted for two counts of violation of his oath as a City of Columbus law enforcement officer. He filed a motion for immunity from prosecution as well as a motion to dismiss and for demurrer. The trial court denied both motions, we granted Watkins's application for interlocutory appeal, and he filed this appeal.[1]

We hold that the majority of the statutory provisions upon which Watkins relies to claim immunity did not become effective until after the alleged offenses were

---

[1] Oral argument was held in this case on February 24, 2026, and is archived on the court's website. See Court of Appeals of Georgia, Oral Argument, Case No. A26A0766 (Feb. 24, 2026), available at https://vimeo.com/1168886319?fl=tl&fe=ec.

committed and so do not apply to his case. And the trial court did not abuse his discretion in denying the motion for immunity based on the one statute that could apply. So we affirm the trial court's order denying Watkins's motion for pretrial immunity.

But we hold that both counts of the indictment charging Watkins are based on a misstatement of law. So we reverse the trial court's order denying his demurrer. On the other hand, we reject Watkins's argument that the trial court erred by ruling in that order that the amended version of OCGA § 16-10-1, the violation-of-oath-by-public-officer statute, applies to his case.

1. *Immunity from prosecution*

Although we reverse the trial court's order denying Watkins's demurrer, we nonetheless address his argument concerning immunity should the issue arise when the case returns to the trial court. We address the immunity issue first in order to set out the factual background.

(a) *Background and factual findings*

On appeal from an order on a motion [for immunity from prosecution] under OCGA § 16-3-24.2, we review the evidence in the light most favorable to the trial court's ruling, and we generally accept

the trial court's findings with regard to questions of fact and credibility if there is any evidence to support them. However, the [c]ourt owes no deference to a trial court's factual findings gleaned from a review of a videotape that are not the subject of testimony requiring the trial court's weighing of credibility or resolving of conflicts in the evidence. This [c]ourt conducts a de novo review of a trial court's legal application of OCGA § 16-3-24.2.

*State v. Copeland*, 310 Ga. 345, 346(1) (850 SE2d 736) (2020).

After conducting a hearing at which witnesses testified, the parties stipulated some facts, the parties introduced stipulated documents, and body camera footage was played, the trial court made findings of fact, which, along with facts that can be discerned from the video recordings, *Hughes v. State*, 296 Ga. 744, 746(1) n.5 ( 770 SE2d 636) (2015), show the following. Watkins was a corporal employed by the City of Columbus Police Department. He and an officer in training were driving in a patrol car in a residential area when they saw the alleged victim and another man, both black, walking in the middle of a narrow street, barely wide enough for two cars to pass one another. Watkins later wrote in his Field Use-of-Force Report that he wanted to a conduct a "Tier 2 stop" on them in order to conduct "training on Tier 2 stops." The

trial court noted that Watkins never stated prior to initiating contact that he had a reasonable articulable suspicion that either of them was about to commit a crime.

Watkins asked the alleged victim to step to the side of the road. Watkins asserted — incorrectly — that the alleged victim was violating a city ordinance prohibiting pedestrians from walking in the middle of the road. The alleged victim disputed that assertion. Watkins asked the alleged victim for his identification, but the alleged victim said he had left it at home. Watkins asked for the alleged victim's name, but the alleged victim refused to give it.

When the alleged victim persisted in refusing to comply with Watkins's commands, Watkins asked him, "Do you want to turn around and put your hands behind your back, or do you want to do the nice and simple thing?" Watkins then handcuffed the alleged victim behind his back. The alleged victim did not resist. However, the alleged victim was clenching his left fist.

According to his Field Use-of-Force Report, Watkins was concerned that the alleged victim may have been holding some type of small weapon. Watkins several times asked the alleged victim what was in his hand, and the alleged victim responded,

"Nothing." He asked the alleged victim to open his hand several times, but the alleged victim refused. Watkins said, "That's fine. We'll do it the hard way."

Watkins placed his taser against the alleged victim's neck and demanded that he open his hand. The alleged victim responded, "Tase me, that'll be you going to jail then." Watkins holstered his taser and slammed the alleged victim against the back of the patrol car, using enough force that Watkins's sunglasses fell from the top of his head to his face. Watkins punched the alleged victim multiple times. Watkins then slammed the alleged victim to the ground and struck him in the face, causing him to bleed.

The alleged victim was placed in the patrol car, taken to jail, and charged with misdemeanor obstruction and violation of OCGA § 40-6-96, Pedestrians On or Along

Roadway.[2] He later pled nolo contendere to both crimes and was sentenced to 12 months of probation.

_____

[2] We note that whether the alleged victim was violating OCGA § 40-6-96 is questionable. The subsection that is arguably applicable is OCGA § 40-6-96(d), which provides,

> Where neither a sidewalk nor a shoulder is available, any pedestrian standing or striding along and upon a *highway* shall stand or stride as near as practicable to an outside edge of the *roadway*, and, if on a two-lane roadway, shall stand or stride only on the left side of the *roadway*.

(Emphasis added.)

Title 40 broadly defines "highway" to mean "the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." OCGA § 40-1-1(19).

But the statutory definition of "roadway" is narrower. OCGA § 40-1-1(53) provides, in relevant part, "'Roadway' means *that portion of a highway* improved, designed, or ordinarily used for vehicular travel, exclusive of the berm or shoulder." (Emphasis added.)

We question how the narrow strip of asphalt in question can be said to have a distinct "portion" constituting a roadway and how OCGA § 40-6-96(d) can be construed in this case to have given "a person of ordinary intelligence fair warning that specific conduct is forbidden or mandated and provide[d] sufficient specificity so as not to encourage arbitrary and discriminatory enforcement." *Smallwood v. State*, 310 Ga. 445, 447(2) (851 SE2d 595) (2020), citing *Derrico v. State*, 306 Ga. 634, 635(2) (831 SE2d 794) (2019).

Watkins was indicted for two counts of violation of oath by public officer. OCGA § 16-10-1. Count one alleged that he violated his oath by violating OCGA § 16-5-23.1, the battery statute, by causing visible bodily harm when he struck the alleged victim, threw him onto the patrol car, and threw him to the ground while he was restrained by handcuffs. Count two alleged that Watkins violated his oath by violating the Columbus Police Department use-of-force policy.

Watkins filed a combined motion to dismiss and demurrer and a separate motion for immunity. The trial court denied both motions, ruling that the indictment was sufficient to withstand a demurrer and that Watkins had not shown by a preponderance of the evidence that he was entitled to immunity. After we granted his application for interlocutory appeal, Watkins timely filed a notice of appeal.

(b) *The trial court did not err in denying the motion for immunity*

Watkins sought immunity from prosecution under OCGA § 16-3-24.2 and other provision incorporated therein. That statute currently provides,

> A person who uses threats or force in accordance with Code Section *16-3-20*, 16-3-21, 16-3-23, 16-3-23.1, 16-3-24, or *17-4-20* shall be immune from criminal prosecution therefor unless in the use of deadly force, such person utilizes a weapon the carrying or possession of which is unlawful by such person under Part 2 of Article 4 of Chapter 11 of this title.

(Emphasis added.)

(i) *OCGA §§ 16-3-20 and 17-4-20 are not incorporated to the applicable version of the immunity statute*

Watkins argued below that he is immune from prosecution under OCGA § 16-3-24.2 because he acted in accordance with the two provisions italicized above that are now cross referenced there: OCGA §§ 16-3-20, a statute that provides justification for six different categories of conduct, and 17-4-20 (d), which concerns, among other

things, peace officers' uses of force. (Those statutes are reproduced in the margin.[3])

---

[3] OCGA § 16-3-20 provides:

The fact that a person's conduct is justified is a defense to prosecution for any crime based on that conduct. The defense of justification can be claimed:

> (1) When the person's conduct is justified under Code Section 16-3-21, 16-3-23, 16-3-24, 16-3-25, or 16-3-26;
>
> (2) When the person's conduct is in reasonable fulfillment of his duties as a government officer or employee;
>
> (3) When the person's conduct is the reasonable discipline of a minor by his parent or a person in loco parentis;
>
> (4) When the person's conduct is reasonable and is performed in the course of making a lawful arrest;
>
> (5) When the person's conduct is justified for any other reason under the laws of this state, including as provided in Code Section 51-1-29; or
>
> (6) In all other instances which stand upon the same footing of reason and justice as those enumerated in this article.

9

So framed, his argument fails at the threshold. The cross references in OCGA § 16-3-24.2, the immunity statute, to OCGA §§ 16-3-20 and 17-4-20 were added in 2024. Ga. L. 2024, p. 543, § 1. The incident at issue here took place five years earlier, in 2019. The amendment provides that it "shall become effective upon its approval by the Governor or upon its becoming law without such approval and *shall apply to all offenses committed and causes of action accruing on or after such date*." Ga. L. 2024, p. 543, § 3 (emphasis added). The Governor approved the amendment on May 2, 2024. Watkins's alleged crimes occurred on October 18, 2019, well before the amendment's effective date.[4] So Watkins cannot claim immunity under OCGA § 16-3-24.2 for uses of force in accordance with OCGA §§ 16-3-20 or 17-4-20, the only two statutes upon

---

OCGA § 17-4-20(d) provides, "No law enforcement agency of this state or of any political subdivision of this state shall adopt or promulgate any rule, regulation, or policy which prohibits a peace officer from using that degree of force to apprehend a suspected felon which is allowed by the statutory and case law of this state."

[4] We observe that in a footnote to his appellate brief, Watkins notes that the state has not opposed the application of the amended statute. But the state's failure to oppose the application of the amended statute does not override the legislature's clear expression of its date of application.

which he relied in his motion in the trial court.[5] So we do not reach the question whether Watkins would be entitled to immunity under either of those provisions.

But, while OCGA § 16-3-24.2 did not cross reference to OCGA §§ 16-3-20 and 17-4-20 at the time of the incident in question, it did provide, "A person who uses threats or force in accordance with Code Section 16-3-21, 16-3-23, 16-3-23.1, or 16-3-24 shall be immune from criminal prosecution therefor unless in the use of deadly force" and under other circumstances not applicable here. So we reach Watkins's argument premised on OCGA § 16-3-21.

(ii) *OCGA § 16-3-21 is applicable, but the trial court did not err in denying the motion for immunity*

Watkins's arguments below do invoke OCGA § 16-3-21. He cited OCGA § 16-3-20(1), which provides, "The defense of justification can be claimed ... [w]hen the person's conduct is justified under Code Section 16-3-21. ..." So Watkins argued below, as to his claim for immunity predicated on OCGA § 16-3-20 — which does not apply — that his actions were in accordance with OCGA § 16-3-21(a) and (c), Use of

---

[5] We do not reach Watkins's other enumerations of error challenging the trial court's order denying his motion for immunity because they either are premised on the assumption that OCGA §§ 16-3-20 and 17-4-20 apply to his case or rely on arguments not raised below.

Force in Defense of Self or Others. As detailed above, the version of OCGA § 16-3-24.2 that existed at the time of Watkins's alleged acts provided, "A person who uses threats or force in accordance with Code Section 16-3-21 ... shall be immune from criminal prosecution." And the trial court addressed a claim for immunity under OCGA § 16-3-21. So we will address the merits of Watkins's argument based on OCGA § 16-3-21(a).[6]

OCGA § 16-3-21(a) provides, "A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force. ..." "[T]he justification defense of self or others contains both subjective and objective components. Thus, in addition to showing that the defendant *actually* believed that his use of force was necessary, he also must show that his fear was *objectively* reasonable." *Benson v. State*, ___ Ga. ___, ___ (2) (___SE2d___), S26A0425, slip op. at 15 (Ga. May 19, 2026) (punctuation omitted). Watkins bears the burden of proving "by the preponderance of the evidence that his conduct was justified so as to entitle him to immunity under OCGA § 16-3-

---

[6] Although he cited both paragraphs (a) and (c) below, on appeal he does not argue for immunity predicated on OCGA § 16-3-21(c).

24.2." *State v. Faison*, _ Ga. __, __(1) (__ SE2d __), S26A0554, slip op. at 10-11 (Ga. May 5, 2026).

The trial court rejected Watkins's argument that his conduct was justified and therefore that he was immune under OCGA § 16-3-21. The trial court rejected that argument because the alleged victim "offered no imminent use of unlawful force against the Defendant or any third party." Watkins argues that he reasonably believed that the alleged victim posed an imminent threat to him and to others and that the trial court incorrectly analyzed the reasonableness of his belief that force was necessary.

But the trial court's finding is supported by the undisputed evidence that, at the time Watkins struck him, the alleged victim was handcuffed with his hands behind his back, did not resist being handcuffed, and at no point was physically combative. So the evidence supports a finding that Watkins's fear was not objectively reasonable. We cannot say that the trial court abused his discretion in denying Watkins's motion for immunity to the extent it was predicated on justification under OCGA § 16-3-21(a).

4. *Demurrer*

Watkins argues, in essence, that the indictment fails to charge him with a criminal act. He argues that the trial court erred by denying his demurrer because,

among other things, the provisions of his oath that he was charged with violating were not prescribed by law. We must agree.

"[A] challenge to the sufficiency of an indictment because it fails to set forth all of the essential elements of the charged crime is properly considered a general demurrer." *Strickland v. State*, 349 Ga. App. 673, 674(1) (824 SE2d 555) (2019).

> This [c]ourt reviews a trial court's ruling on a general demurrer de novo in order to determine whether the allegations in the indictment are legally sufficient. A general demurrer challenges the sufficiency of the substance of the indictment, and asks whether it is capable of supporting a conviction. The general demurrer must be granted if the indictment fails to either (1) recite the language of the statute that sets out all the elements of the offense charged or (2) allege the facts necessary to establish a violation of a criminal statute.

*State v. Phillips*, 323 Ga. 125, 128(2) (924 SE2d 265) (2025) (citation modified).

At the time of the alleged crimes, OCGA § 16-10-1 provided, "Any public officer who willfully and intentionally violates the terms of his oath as prescribed by law shall, upon conviction thereof, be punished by imprisonment for not less than one nor more than five years."

In his oath Watkins swore or affirmed that he would, to the best of his skill and ability, "faithfully uphold the Constitution of the United States, the Constitution of the State of Georgia and, in all cases, conform to and enforce the laws of the United States, the State of Georgia, and the Charter and Ordinances of the Consolidated Government of Columbus, Georgia[,]" and that he would "execute the orders of [his] Superiors and, in all cases, comply with the rules and regulations governing the Columbus Police Department. ..."

Count 1 of the indictment charged Watkins with violating his oath when

being a public officer with the Columbus Police Department he did willfully and intentionally violate the terms of his oath as prescribed by law, in that he did swear to conform to the laws of the State of Georgia and then did violate OCGA § 16-5-23.1 in that he did intentionally cause visible bodily harm to [the alleged victim] by striking him with a closed fist and throwing him on a car and to the ground while [the alleged victim] was restrained by handcuffs. ...

Count 2 charged Watkins for violating his oath when

being a public officer with the Columbus Police Department, he did willfully and intentionally violate the terms of his oath as prescribed by law, in that he did swear to execute the orders of his superiors and comply with the rules and regulations governing the Columbus Police Department and then did violate Columbus Police Department General

15

Order 3-1 regarding use of force in that he did use force against [the alleged victim] after [the alleged victim] submitted to arrest and was not actively resisting arrest, attempting to evade arrest by flight, or presenting a threat of harm to said officer or others. ...

To prove the crime of violation of oath under OCGA § 16-10-1, the state must show "that the defendant violated the terms of the oath actually administered and that those terms were from an oath 'prescribed by law,' that is, *one that the legislature required of a public officer before entering the duties of his or her office*." *Bradley v. State*, 292 Ga. App. 737, 740(2) (665 SE2d 428) (2019) (emphasis added; punctuation omitted), quoting *Jowers v. State*, 225 Ga. App. 809, 810-13(2) (1997) (reversing conviction for violation of oath of public officer, because defendant's oath "to uphold the laws of this state" was not expressly "prescribed by law" as the plain language of OCGA § 16-10-1 requires). Accord *Pierson v. State*, 348 Ga. App. 765, 777(2)(b) (824 SE2d 657) (2019) (phrase "the terms of [the] oath as prescribed by law" means "the terms required and codified by the Georgia legislature"). See generally *Phillips*, 323 Ga. at 134-35 (Peterson, C.J., concurring).

So we turn to the statutes providing for the oaths of law enforcement officers. OCGA § 45-3-10.1 provides (and provided at the time of these alleged crimes) that

OCGA §§ 45-3-1 through 45-3-10 in the Article of the Code concerning official oaths apply to peace officers. The specific provisions setting out oaths in OCGA §§ 45-3-1 through 45-3-10 are as follows.

At the applicable time, OCGA § 45-3-7 provided, "Before proceeding to act, all deputies shall take the same oaths as their principals take and the oaths shall be filed and entered on the minutes of the same office with the same endorsement thereon. ..." OCGA § 15-16-4, in turn, sets out the sheriff's — or "principal's" — oath of office:

> Before entering on the duties of their office the sheriffs shall take and subscribe, in addition to the oath required of all civil officers, the following oath before the judge of the superior court or the judge of the probate court:
>
> > "I do swear that I will faithfully execute all writs, warrants, precepts, and processes directed to me as sheriff of this county, or which are directed to all sheriffs of this state, or to any other sheriff specially, which I can lawfully execute, and true returns make, and in all things well and truly, without malice or partiality, perform the duties of the office of sheriff of _____ County, during my continuance therein, and take only my lawful fees. So help me God."

17

Another applicable oath is found at OCGA § 45-3-1, which requires every public officer to:

(1) Take the oath of office;

(2) Take any oath prescribed by the Constitution of Georgia;

(3) Swear that he or she is not the holder of any unaccounted for public money due this state or any political subdivision or authority thereof;

(4) Swear that he or she is not the holder of any office of trust under the government of the United States, any other state, or any foreign state which he or she is by the laws of the State of Georgia prohibited from holding;

(5) Swear that he or she is otherwise qualified to hold said office according to the Constitution and laws of Georgia;

(6) Swear that he or she will support the Constitution of the United States and of this state; and

(7) If elected by any circuit or district, swear that he or she has been a resident thereof for the time required by the Constitution and laws of this state.

None of these oaths — the only oaths the legislature required of peace officers such as Watkins — required the officer to swear or affirm "to conform to the laws of the State of Georgia" or "to execute the orders of his superiors and comply with" departmental rules and regulations, the terms of Watkins's oath that he was charged with violating.[7]

The assertion in both counts of the indictment that Watkins's oath was "prescribed by law" merely states a legal conclusion, not an allegation of fact. See *Lawson v. State*, 375 Ga. App. 673, 677(2) (917 SE2d 233) (2025) (provision in indictment that defendant "was required to register under the laws of Georgia as a sex offender merely states a legal conclusion, not an allegation of fact"). And "[a]lthough we must accept all factual allegations [in an indictment] as true," we are not required to accept conclusions of law. *Powell v. State*, 318 Ga. 875, 883(2), n. 6 (901 SE2d 182) (2024).

---

[7] The legislature has since corrected this omission. The legislature amended OCGA § 45-3-7 to require peace officers who take their oaths on or after July 1, 2025, to swear or affirm that they "will faithfully, fairly, and without malice or partiality uphold the laws of the State of Georgia, as well as any ordinances which [they are] authorized to enforce. ..." OCGA § 45-3-7(b) (2025). See Ga. L. 2025, p. 497, § 9. But Watkins took his oath in December 2014.

The legal conclusion that the terms of the oath that Watkins allegedly violated were prescribed by law is incorrect. So even if Watkins admitted the factual allegations of the indictment, he would still be "innocent of the alleged crimes because[, at that time,] it [was] legally impossible to commit the crimes in the way the [s]tate alleged in the indictment." *Powell*, 318 Ga. at 882(2). For this reason, the trial court erred in denying Watkins's demurrer.

3. *Amended statute*

In a separate enumeration of error, Watkins argues that the trial court erred by ruling that the amended version of OCGA § 16-10-1, Violation of Oath by Public Officer, does not apply to his case. The trial court was correct; it does not apply.

The amendment in question, effective July 1, 2025, added OCGA § 16-10-1(c), which provides, "No individual shall be subject to prosecution for violation of his or her oath of office under this Code section, except where such violation is predicated upon the commission of a felony or a misdemeanor of a high and aggravated nature." See Ga. L. 2025, p. 497, § 4. Watkins argues that the amended statute applies to his case, and since he was charged with violating his oath predicated on a misdemeanor and a violation of departmental policy, he cannot be convicted of violating his oath.

20

"It has long been the law in this state that, in general, a crime is to be construed and punished according to the provisions of the law existing at the time of its commission." *Fleming v. State*, 271 Ga. 587, 590 (523 SE2d 315) (1999). Nothing in the amended statute indicates that it applies retroactively. So the version of OCGA § 16-10-1 in effect at the time of the alleged commission of the crimes — without the provision that a prosecution for violation of oath must be predicated on a felony or a high and aggravated misdemeanor — applies.

*Judgment affirmed in part and reversed in part. Watkins and Padgett, JJ., concur.*